## TEXAS EMPLOYERS' INS. ASS'N. v. BRADSHAW et al.

### No. 8378.

Court of Civil Appeals of Texas. San Antonio. March 19, 1930.

Rehearing Denied April 30, 1930.

Eskridge & Groce, of San Antonio, for appellant.

Carter & Stiernberg, of Harlingen, for appellees.

## SMITH, J.

This was an appeal to a district court from an award made by the State Industrial Accident Board to J. L. Bradshaw, an employee of a subscriber to the Workmen's Compensation Act. The cause was tried before the court without a jury, and the insurer, the Texas Employers' Insurance Association, has appealed. The case comes here on the findings and conclusions of the trial judge, there being no statement of facts in the record. The award in the court below was for specific compensation, and $200 doctor's bill. The reasonableness of these amounts is not controverted but the appeal is based upon the contention that no award should have been made.

The trial court found that appellee, in the course of his employment, "injured his right hand index finger by sticking same in a strand cable, which cable was attached to a shive block on which said defendant was working. This injury was slight at first and bled slightly, but after calling the attention of the foreman Glasscock, to said injury, the defendant Bradshaw continued working, and worked for a period of about four days, at which time said injured finger became infected and shortly thereafter on the 12th day of September, 1928, developed a bad case of blood-poisoning, and for a period of about thirty days he was confined to his bed in a very serious condition."

On September 22, appellee "notified plaintiff (appellant) of the injury, but stated in said notice that although said injury was incurred in the line of duty the defendant, (appellee) Bradshaw, did not remember the exact incident which caused said injury. Plaintiff immediately, sometime during the latter part of September, 1928, sent its agent, J. C. Hurd, to investigate the case, and the said agent, Hurd, went to the home of the defendant, Bradshaw, talked with the doctors and made a full and complete investigation of said injury. The said agent, Hurd, also took several statements from the defendant, Bradshaw, in which the said Bradshaw stated that at the time of making such statements he did not remember the exact cause of the injury to his finger. At the time of making such statement, however, Bradshaw was in a very serious condition as a result of the infection which was caused as a result of said injury. Subsequently, and before six months had expired from the date of said injury, the defendant, Bradshaw, filed his claim with the Industrial Accident Board, stating that the injury to defendant's finger was caused on September 12th from removing taps from acetylene tanks. But subsequent to the time of making such statement, the defendant, while removing the cable which caused the injury aforesaid, had recalled to his mind the incident in which said finger was injured and by referring to his records fixed the date of the injury on the 6th day of September, 1928, and I find that the said injury occurred on the said 6th day of September, 1928, in the manner above set out."

The trial court further found that "although the Plaintiff did not have notice within thirty days of the exact date and the exact manner in which the injury occurred, that they had ample opportunity to investigate it, and that they knew the defendant had been injured some time about this time, and that Plaintiff's agent, J. C. Hurd, received the actual notice of defendant's injury within thirty days from the date of such injury and that Plaintiff had notice that defendant, Bradshaw, had been injured within thirty days from the date of said injury, but not of the exact nature and kind of injury as that sustained by him. I find, however, that whether or not actual notice of the particular injury which caused the illness of defendant was given to the plaintiff within thirty days of the date of same, that because of the above facts and because defendant was seriously ill and in bed 30 days following the injury, this is a meritorious case in which good cause has been shown for waiving strict compliance by defendant with the provisions of Section 4-a of part 2, chapter 179, of the General Laws of the 33rd Legislature, as amended by Gen. Laws 1917, c. 103, pt. 2, § 4a, requiring notice to be given within thirty days, and the above being all the facts then Plaintiff herein has in no way been prejudiced or suffered any injury by the delay in giving notice of the exact cause of said injury within thirty days of the filing of said claim."

Appellant contends in its first proposition that the notice given it as shown in the foregoing statement was not such notice of injury as required by the Compensation Act as a prerequisite to a claim for compensation. In this connection it is provided in the act (section 4a, art. 8307, R. S. 1925): "Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

It will be observed that the notice required in the provision therefor may be given to the insurer or to the employer. No particular manner or form of such notice is prescribed, and therefore it ought to be true that any sort of *actual* notice would suffice to satisfy the statute. We are of the opinion that when appellee received the injury and called it to the

attention of his foreman, this knowledge of his foreman would be imputed to the employer. It seems to have been so held. Ins. Ass'n v. Wonderley (Tex. Civ. App.) 16 S.W. (2d) 386. Especially would this be true when considered along with the notice given appellant by appellee himself, on September 22, concerning his injury, notwithstanding he could not, and did not at that time, advise the insurer of the date, occasion, or nature of the accident which resulted in his injuries. The insurer's agent made a very full investigation of the whole case, as a result of this notice.

Obviously, the object of the provision for timely notice is to enable the insurer to make his own investigation of the facts upon which the employee grounds his claim for compensation. It seems equally obvious that in order to strictly comply with the statutory requirement the employee must, within the specified period, apprise the insurer of the time and nature of the accident as well as of the resulting injury. But the statute must be liberally construed, and reasonably administered, in fairness and justice alike to both parties. The insurer is entitled, and the employee is held, to a good-faith endeavor upon the latter's part to comply with the statutory requirement. The question of whether or not in a given case the employee has sufficiently complied with the requirement is made one of fact, to be determined by the Accident Board in the first instance, or by trial courts on appeals thereto, for it is provided in article 8307 that in "meritorious cases," for "good cause" shown, the board "may waive strict compliance" with the requirements as to notice. The effect of this exception is to give a wide discretion to the board, and to trial courts, in determining the sufficiency of the employee's efforts to comply with those requirements, and in waiving strict compliance therewith. Their rulings upon these questions should not be disturbed except where there is a clear abuse of the discretion vested in them by this statute. This case presents no such exception. We overrule appellant's first proposition.

■■ The trial court further found:

"Shortly after the defendant, Bradshaw's condition became serious, the services of Doctor W. O. Brown, who had been employed by the L. E. Myers Company under the direction of the Texas Employers' Insurance Company, became unsatisfactory to the defendant, Bradshaw, and Doctor C. M. Cash was employed by the L. E. Myers Company, and he treated the defendant from about the 15th day of September, 1928, and he operated on him and furnished all medical aid received by said defendant during the period of his serious illness with the exception of the first few days when Doctor Brown treated the defendant. That the Plaintiff discovered that Doctor Cash was treating the defendant about October 1st, 1928, and discussed the condition of said Bradshaw with Doctor Brown on that date,

but at the time neither affirmed nor denied the liability of the Texas Employers' Insurance Association for said medical bills, but on October 15th, 1928, and after all of the medical services for which compensation is claimed had been furnished, Doctor Cash was written to the effect that the Texas Employers' Insurance Association had furnished Doctor Brown in this case, and did not consider themselves liable for Doctor Cash's bill. The charge made by Doctor Cash, to-wit, the sum of $200.00, was reasonable for the services rendered by him to said Bradshaw, and such services were necessary.

"That the defendant Bradshaw filed his claim before the Industrial Accident Board for the medical services rendered by the said Doctor C. M. Cash, but that the Industrial Accident Board did not render any judgment for said medical services and although evidence to establish said claim for medical services was presented and heard before said Board at the same time that it heard evidence and rendered judgment for the defendant, Bradshaw, for the loss of the use of his right index finger, to-wit: on the 16th day of March, 1929."

It is contended by appellant in its second proposition that because the Industrial Accident Board failed to act upon, by either rejecting or granting, the appellee's claim for "medical bill," the district court was without jurisdiction to adjudicate that claim. This contention is based upon the well-established rule that the board is given exclusive original jurisdiction of all claims of employees arising from injuries sustained by them in the course of their employment. It is urged that until the board has affirmatively adjudicated the claim for medical expenses, no court may exercise jurisdiction thereover. It is true that the board has exclusive original jurisdiction of all claims arising from injuries to the employee of a subscriber. It may be conceded, for the purpose of this decision, that it had such jurisdiction over appellee's claim for medical expenses. But such jurisdiction was invoked in this case, for the claim for medical expense was filed with and presented to the board, along with appellee's principal claim. The board simply omitted to actually adjudicate that claim, to exercise its jurisdiction to a conclusion of the incidental issue of medical expenses. The appeal to the district court from the award of the board had the effect of transferring to that court all the matters which had been presented to the board, whether they had all been expressly acted upon by that body, or not. The appeal had the effect of bringing the whole case to the district court, which thereby acquired all the jurisdiction exercisable by the board in the first instance.

■ As shown in the last-quoted findings of the trial court, appellee was first treated by appellant's physician, Dr. Brown, who, proving unsatisfactory, was discharged by appel-

lee, who then employed Dr. Cash. It is conceded that appellee engaged Dr. Cash without consulting appellant, or the board. It is further conceded, however, that appellant's agents soon learned of the change in doctors, and of Dr. Cash's employment in lieu of Dr. Brown, but made no objection thereto until after appellee's recovery. Appellant now contests Dr. Cash's account, contending that his employment was in contravention of the statute. It is provided in section 7, art. 8306, that during the first four weeks following the date of the infliction of an injury the insurer shall furnish "reasonable medical aid" to the employee; that if it fails to furnish such aid "as and when needed," then the employee may provide such aid at the expense of the insurer. In rejecting this contention the trial court concluded that appellee was entitled to recover the amount of Dr. Cash's bill "since appellant knew during the time said medical aid was being furnished that the said Dr. Cash was rendering such aid to appellee, and knew that such medical aid was necessary and made no objection to same, and thereby acquiesced, affirmed and ratified the employment of the said Dr. Cash, and since the first objection and refusal to pay for such services was made on October 15, after all of the medical services for which compensation is claimed had been rendered." We are of the opinion this ruling should be upheld. The insurer was required under the statute to furnish reasonable medical aid to appellee, as and when needed during his disability. At the first it did furnish its own doctor, whose services were dispensed with by appellee because not satisfactory to him. Appellee then called a doctor of his own choosing, who took charge of the case and treated it to its conclusion. This was done with the knowledge of appellant, who raised no objection to the proceeding. Being liable primarily for this medical expense, we conclude that appellant made itself liable in this case by its conduct.

The judgment is affirmed.