NICHOLAS *v*. ST. JOHNS TABLE CO.

1. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—OCCUPA-
TIONAL DISEASES—TOTAL DISABILITY—EVIDENCE.
   In proceeding to recover workmen's compensation under the oc-
   cupational disease amendment for toxic encephalitis, testi-
   mony sustained finding of department of labor and industry
   that plaintiff was totally disabled (Act No. 10, pt. 7, Pub.
   Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts
   1937).

2. SAME—OCCUPATIONAL DISEASES—REPORT OF MEDICAL COMMISSION.
   In proceeding to recover workmen's compensation under the
   occupational disease amendment, report of medical commission
   appointed by the department was properly admitted in evi-
   dence notwithstanding it was dated at time originally set for
   examination whereas examination was conducted less than a
   month later where no question is raised as to the authenticity
   of the report or the regularity of the examination (Act No.
   10, pt. 7, § 6, Pub. Acts 1912 [1st Ex. Sess.], as added by Act
   No. 61, Pub. Acts 1937).

3. SAME—OCCUPATIONAL DISEASES—POISONING BY BENZOL.
   Poisoning by benzol, when caused by any process involving the
   use of or direct contact with benzol, is a scheduled occupa-
   tional disease (Act No. 10, pt. 7, § 2, subd. 8, Pub. Acts 1912
   [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

4. SAME—OCCUPATIONAL DISEASES—REPORT OF MEDICAL COMMISSION
   —DATE OF DISABLEMENT.
   The medical commission appointed by the department of labor
   and industry under the occupational disease amendment to
   the workmen's compensation act is limited and may determine
   only the condition of the injured employee on the date he ap-
   pears before it for its examination and its report is final
   only as to that date while the liability of the employer is to
   be determined as of the date of disablement of the employee
   (Act No. 10, pt. 7, § 6, Pub. Acts 1912 [1st Ex. Sess.], as
   added by Act No. 61, Pub. Acts 1937).

5. WORDS AND PHRASES—SEQUELA AS A MEDICAL TERM.
   As a medical term, *sequela* means a disease or morbid condition
   left as the result of disease.

6. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—TOXIC EN-
CEPHALITIS—POISONING BY BENZOL.

Toxic encephalitis resulting from poisoning by benzol is a
scheduled occupational disease (Act No. 10, pt. 7, § 2, subd. 8,
Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub.
Acts 1937).

7. SAME—SCHEDULED OCCUPATIONAL DISEASES—SEQUELA—FINDINGS
OF MEDICAL COMMISSION.

When examining a plaintiff claiming to be suffering from a
disease not specifically named in the schedule of occupational
diseases in the amendment of the workmen's compensation
act, but only referred to therein under the word *sequelae* fol-
lowing another disease specifically named therein, a medical
commission must determine not only whether the plaintiff is
suffering from the disease alleged to be a *sequela* but, if so,
whether that disease is the *sequela* of the disease specifically
named in the schedule (Act No. 10, pt. 7, § 2, subd. 8, Pub.
Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts
1937).

8. SAME—MEDICAL COMMISSION—FINALITY OF DETERMINATIONS—
SEQUELAE OF SCHEDULED OCCUPATIONAL DISEASES.

The determination of the medical commission appointed by
department of labor and industry under occupational disease
amendment of workmen's compensation act that employee, at
time of examination, was suffering from disease alleged to be
the *sequela* of a disease named in the schedule of diseases
covered by the act is final since it relates to employee's then
present condition but the medical commission's determination
that such is the *sequela* of a disease named in the schedule is
in the nature of a retrospective diagnosis and merely con-
stitutes evidence, when introduced into record of department,
upon which department may make finding that the disease
from which employee was suffering was the *sequela* of one
named in the schedule (Act No. 10, pt. 7, §§ 2, 6, Pub. Acts
1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937;
2 Comp. Laws 1929, § 8451).

9. SAME—ACCEPTANCE OF BENEFITS—CONSTITUTIONAL LAW.

A nonmunicipal employer who has accepted benefits under the
workmen's compensation act cannot challenge its constitu-
tionality (2 Comp. Laws 1929, § 8407 *et seq.*).

10. SAME—OCCUPATIONAL DISEASES—MEDICAL COMMISSION—UN-
SWORN REPORT.

The report of a medical commission appointed by department
of labor and industry under the occupational disease amend-

ment of the workmen's compensation act may serve as evidence even though the report is not sworn to (Act No. 10, pt. 7, § 6, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

11. SAME—OCCUPATIONAL DISEASES—CONTRACTION—DISABLEMENT.

Employee who contracted an occupational disease and thereafter remained in the employ of same employer until time of disablement need not show disease was contracted within 12 months of disablement (Act No. 10, pt. 7, § 5, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

12. SAME—OCCUPATIONAL DISEASE—LAST INJURIOUS EXPOSURE—DATE OF DISABLEMENT.

Disablement caused by toxic encephalitis resulting from benzol poisoning was compensable where last injurious exposure occurred after effective date of occupational disease amendment to workmen's compensation act notwithstanding plaintiff may have contracted the disease from exposures prior to such date (Act No. 10, pt. 7, § 13, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

13. SAME—OCCUPATIONAL DISEASES—DATE OF DISABLEMENT.

The occupational disease amendment to the workmen's compensation act speaks in terms of disablement, requires the department of labor and industry to determine the date thereof and requires that notice shall be given within 120 days after disablement (Act No. 10, pt. 7, §§ 7, 10, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

14. SAME—OCCUPATIONAL DISEASES—REPORTS—STATUTE OF LIMITATIONS.

Under evidence showing an official of defendant employer was interviewed by plaintiff under circumstances showing official had knowledge that plaintiff attributed his disability to a substance in the room in which he had worked, defendant was estopped from interposing defense of statute of limitations where no report of the disablement had been filed (Act No. 10, pt. 7, § 10, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937; 2 Comp. Laws 1929, §§ 8431, 8456 [e]).

15. SAME—REPORTS—ADMISSION OF LIABILITY.

The employer's report of an accident or disability of an employee under the workmen's compensation act need not admit liability therefor.

16. SAME—OCCUPATIONAL DISEASES—POISONING BY BENZOL.

Under the occupational disease amendment to the workmen's compensation act, disability arising from poisoning by benzol

is compensable because such poisoning is characteristic of, peculiar to, and due to the nature of, employment wherein there is any process involving the use of or direct contact with benzol (Act No. 10, pt. 7, §§ 1-3, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

17. SAME—FINDINGS—TOXIC ENCEPHALITIS—BENZOL POISONING.
   It was not error for the medical commission and the department of labor and industry to hold that toxic encephalitis was the result of benzol poisoning, a scheduled occupational disease, under the evidence adduced, and award compensation and mention toxic encephalitis by way of description of the employee's present and continued disabled condition (Act No. 10, pt. 7, § 2, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

18. SAME—OCCUPATIONAL DISEASES—TOXIC ENCEPHALITIS—APPLICATION FOR ADJUSTMENT OF CLAIM—PHYSICIAN'S AFFIDAVIT.
   Application for adjustment of claim for workmen's compensation under the occupational disease amendment, in which it is stated that plaintiff was suffering from toxic encephalitis, together with attached affidavit by physician that plaintiff was suffering from conditions described in designated clauses of the occupational disease amendment, though crudely drawn, were sufficiently informative (Act No. 10, pt. 7, § 2, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

19. SAME—SUPREME COURT—FINDINGS BY DEPARTMENT—EVIDENCE.
   The Supreme Court is bound by the findings of fact of the department of labor and industry where there is evidence to support such findings (2 Comp. Laws 1929, § 8451).

Appeal from the Department of Labor and Industry. Submitted April 9, 1942. (Docket No. 53, Calendar No. 41,940.) Decided September 8, 1942.

Russell G. Nicholas presented his claim under the occupational disease amendment to the workmen's compensation act against St. Johns Table Company, employer, and Lumberman's Mutual Casualty Company, insurer. Award to plaintiff. Defendants appeal. Affirmed.

*Millington & Korn,* for plaintiff.

*Sessions & Warner,* for defendants.

Butzel, J. On December 13, 1940, plaintiff filed with the department of labor and industry a notice and application for adjustment of claim against the St. Johns Table Company, Cadillac, Michigan, under the occupational disease amendment. In the statements therein he said that he was suffering "from the disease known as toxic encephalitis listed under section 2" of "the occupational disease amendment to the compensation act, being Act No. 61, Pub. Acts 1937," and "that the nature of the exposure and the work plaintiff was engaged in is as follows: Brushing and dipping, furniture stains on furniture, in factory. The smell and exposure to the fumes of the paint and stains made me sick. Date of last injurious exposure: Feb. 22, 1940," and that this was the day he ceased work. Attached to and accompanying the notice and application is an affidavit of a doctor, that he personally examined plaintiff on March 1, 1940, and believed him to be suffering "from the occupational disease known as toxic encephalitis resulting from conditions described in numbers 7 and 8 of compensation law."

The employer, St. Johns Table Company, and its insurer, defendants herein, denied liability, attacked the sufficiency of the notice and application, denied that toxic encephalitis is an occupational disease covered by the act, and raised other questions.

For considerable periods between 1919 and 1935, plaintiff worked at the St. Johns Table Company, each time leaving its employ to return to the farm. However, since September, 1935, except for two short intervals on account of sickness, plaintiff was

uninterruptedly employed by the company in its finishing room. His duties included the dipping of pieces of furniture in a tank of stain, and then brushing the furniture with a brush. The stain used in the dipping tank was made of a mixture of 55 gallons of an ingredient procured from a barrel or drum and three quarts of benzol. Plaintiff's bare hands were inserted in this mixture and sometimes it would be splashed on his face. Plaintiff had an appendectomy on April 5, 1939. Prior to this time, he had suffered with gas pains and headaches. These symptoms continued with increasing severity after his operation. He became disabled on February 22, 1940, when he had 2½ hours of dizziness, fell to the floor, had a convulsion, was taken to a hospital and then home. He claims he became totally disabled and has not worked since. On March 30, 1940, he went to the University hospital at Ann Arbor and remained there three weeks. He returned there for a checkup the following September, and in October he went back for medical examinations. Following a relapse, he was called back for a checkup in January, 1941. He suffers from dizziness, is not sure-footed, has had convulsions, and has done no work since February 22, 1940. The testimony sustains the finding of total disability.

On January 30, 1941, the department appointed a medical commission of three doctors at the University to examine plaintiff and ordered him to present himself at the University hospital on February 12, 1941. He wrote asking for a postponement, which was granted. He went to Ann Arbor and was examined March 3–6, 1941. The report of the medical commission is dated February 12, 1941. Obviously this is an error explained by the fact that the date originally set for the examination was

February 12, 1941. No question is raised as to the authenticity of the report, or the regularity of the examination. There was no error in the admission of the report. The medical commission found that plaintiff was "suffering from toxic encephalitis resulting from (7) poison by wood alcohol, or, (8) poisoning by benzol or nitro-, hydro-, hydroxy-, and amido-derivatives of benzene (dinitro-benzol, anilin, and others) or its *sequelae*."

After taking proofs, the deputy commissioner found that "plaintiff suffered an occupational disease, toxic encephalitis, arising out of and in the course of his employment," and awarded him compensation at $18 per week from February 22, 1941. The department on review modified the award so as to make the compensation begin February 22, 1940. In its opinion, it found that by undisputed testimony plaintiff was working with benzol and that he suffered from hoarseness, headaches and gas pains for some time before his disablement, and particularly so during the two months preceding his disablement, and that his discomfort and pain lessened when he left work at the end of each day only to return upon his resuming work the following morning, that he did not come in contact with wood alcohol in any way, but that he did with benzol which, according to the medical commission's report, caused toxic encephalitis, that he did not come in contact with benzol outside of the furniture factory. The department concluded that it was obvious from the facts before them that his occupational disease resulted from poisoning by benzol.

Poisoning by benzol, when caused by any process involving the use of or direct contact with benzol, is a scheduled occupational disease. Act No. 10, pt. 7, § 2, subd. 8, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp.

1940, § 8485–2, subd. 8, Stat. Ann. 1941 Cum. Supp. § 17.221, subd. 8).

Defendant introduced a medical witness who testified that encephalitis or inflammation of the brain could not be caused by poisoning, that poisoning could cause irritation but not inflammation. This witness, who examined plaintiff about January 1, 1941, ascribed plaintiff's condition to arteriosclerosis. The three physicians who signed the medical commission's report evidently believed that toxic encephalitis could be, and, in this case, had been caused by poisoning by benzol. The department had the medical commission's report before it. The report virtually stated that plaintiff either was or had been suffering from poisoning from wood alcohol or benzol which resulted in toxic encephalitis.

Act No. 10, pt. 7, § 6, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–6, Stat. Ann. 1941 Cum. Supp. § 17.225), provides:

"In case the employee is alleged to be suffering from an occupational disease and there shall be a dispute with respect thereto, the said board,* or any member thereof, shall appoint a commission of three qualified impartial physicians to examine the injured employee and to report. The report, when signed by at least two of the members of said commission, shall be final and conclusive as to the condition of said employee with respect to the alleged disease or diseases."

In *Smith* v. *Wilson Foundry & Machine Co.*, 296 Mich. 484, 489, we held:

"It appears from the above section of the act that the medical commission is limited and may deter-

* The powers and duties of the industrial accident board, here referred to, have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312 (Stat. Ann. § 17.3).—REPORTER.

mine only the condition of the injured employee on the date that he appears before it for examination. Its report is final only as to the date of the examination, but the liability of the employer is to be determined as of the date of the disablement of the employee. *Ruffertshafer* v. *Robert Gage Coal Co.,* 291 Mich. 254.''

In the case at bar, the medical commission found that, on the day of the examination, plaintiff was ''suffering from toxic encephalitis resulting from (7) poison by wood alcohol, or, (8) poisoning by benzol or nitro-, hydro-, hydroxy-, and amido-derivatives of benzene (dinitro-benzol, anilin, and others) or its *sequelae.*'' It may be argued that the only condition which the medical commission found in existence at the date of the examination is toxic encephalitis, that in effect the medical commission made no express finding one way or another as to whether poisoning by benzol then existed, but simply referred to it as causative of the toxic encephalitis, and therefore, by implication, found that it (the poisoning by benzol) had once existed.

However this may be, it is to be emphasized that the legislature has defined as an occupational disease, under caption 8 of the schedule in section 2, not only poisoning by benzol, et cetera, but also its *sequelae.* As a medical term, *sequela* means ''a disease or morbid condition left as the result of a disease'' (Webster, New International Dictionary [2d Ed.]). Thus, if toxic encephalitis resulted from poisoning by benzol, it is a scheduled occupational disease. We hold that it is within the competence, and is the duty, of the medical commission, when examining a plaintiff who claims that he is suffering from a disease not specifically named in the schedule but only referred to therein under the words

"or its *sequelae*" following another disease specifically named therein, to determine not only whether plaintiff is suffering from the disease alleged to be the *sequela,* but, if that determination is in the affirmative, also to determine whether the disease from which he is suffering is the *sequela* of the disease specifically named in the schedule. The former determination has the privilege of finality, under section 6, since it relates to the present "condition of said employee with respect to the alleged disease or diseases." The latter determination, being in the nature of a retrospective diagnosis, or reconstruction of the employee's case history, would not come within the statutory privilege of finality and conclusiveness, but nevertheless, when the medical commission's report was introduced into the record of the department of labor and industry, such determination furnished some evidence (1) that toxic encephalitis could be the result of benzol poisoning, and (2) that, in the case at bar, it was.

Defendants moved to strike the medical commission's report on various constitutional grounds. We disposed of these in *Flanigan* v. *Reo Motors, Inc.,* 300 Mich. 359, where we held that a nonmunicipal employer who had accepted benefits under the act could not challenge its constitutionality.

Though the medical commission's report is not sworn to, the legislative intent that it should serve as evidence is clear. Such being the command of the statute, and the latter not being open to constitutional attack in these proceedings, the department of labor and industry was entitled to regard the report as some evidence of the facts enumerated, and to disbelieve the testimony of the medical witness sworn for defendants, which controverted both the possibility and the fact of benzol poisoning's resulting in encephalitis. Act No. 10, pt. 3, § 12, Pub.

Acts 1912 (1st Ex. Sess.) (2 Comp. Laws 1929, § 8451 [Stat. Ann. § 17.186]) ; *Flores* v. *Nicholson Terminal & Dock Co.*, 299 Mich. 5.

The department considered defendants' contention that inasmuch as plaintiff had no proof that he had contracted the occupational disease mentioned within 12 months prior to February 22, 1940, he was barred from compensation under section 5 of the occupational disease amendment to the compensation act. Act No. 10, pt. 7, § 5, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-5, Stat. Ann. 1941 Cum. Supp. § 17.224), reads as follows:

"Neither the employee nor his dependents shall be entitled to compensation for disability or death resulting from such occupational disease, unless such occupational disease is due to the nature of his employment and was contracted therein, or in a continuous employment similar to the one in which he was engaged at the time of his disablement, within twelve months previous to the date of disablement, whether under one or more employers. The time limit for contraction of the occupational disease prescribed by this section shall not bar compensation in the case of an employee who contracted such occupational disease in the same employment with the same employer by whom he was employed at the time of his disablement and who had continued in the same employment with the same employer from the time of contracting such occupational disease up to the time of his disablement thereby."

The department held that, even if the words "such occupational disease" found in section 5 do not refer exclusively to silicosis and other dust diseases mentioned in section 4, the next preceding section, but impose a limitation of time as to the other occupational diseases scheduled in section 2 (of which poisoning by benzol is No. 8), in any event, the present case falls squarely within the exception

mentioned in the last sentence of section 5, *supra.* Whether section 5 applies exclusively to section 4 or not, the plaintiff herein "continued in the same employment with the same employer from the time of contracting such occupational disease up to the time of his disablement thereby." Therefore, plaintiff is within the class of cases expressly excepted from the application of the time limitation according to defendants' own theory.

Defendants further claim that inasmuch as the department in its opinion held that, because plaintiff commenced work in September, 1935, with the stain containing benzol, the date of contracting such disease must have been after that date, it is quite possible that plaintiff contracted the disease prior to October 29, 1937, the effective date of the occupational disease act, and, for that reason, plaintiff would not be entitled to compensation. Defendants evidently rely on Act No. 10, pt. 7, § 13, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–13, Stat. Ann. 1941 Cum. Supp. § 17.230 [2]), the relevant portion of which reads:

"This act shall not apply to cases of occupational disease in which the last injurious exposure to the hazards of such disease occurred prior to the effective date of this act."

However, in the instant case, the last injurious exposure occurred February 22, 1940, *i.e.,* after the effective date of the act, and, therefore, disablement caused by the disease is compensable, whether the date of contraction of the disease was before or after the effective date of the act. While there frequently may be some question as to the exact moment when an occupational disease was contracted, when it did not immediately manifest itself, there can be no question that plaintiff's last injurious ex-

posure occurred after the effective date of the act and, therefore, section 13 does not make disablement caused by such disease uncompensable. The amendment to the compensation act making provision for occupational diseases, part 7, *supra,* speaks in words of disablement. Section 7 of part 7 (Comp. Laws Supp. 1940, § 8485-6, Stat. Ann. 1941 Cum. Supp. § 17.226), states the board* shall determine the date of disablement. Section 10 (Comp. Laws Supp. 1940, § 8485-10, Stat. Ann. 1941 Cum. Supp. § 17.229) states the notice shall be given within 120 days after the disablement.

The department held, and defendants do not deny, that defendant employer did not report plaintiff's disablement as an accident to the department of labor and industry at any time, and, therefore, are in no position to urge that plaintiff did not give notice to his employer within 120 days after his disablement, as provided by Act No. 10, pt. 7, § 10, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-10, Stat. Ann. 1941 Cum. Supp. § 17.229), nor make claim for compensation within 6 months after his disablement, as provided by Act No. 10, pt. 2, § 15, Pub. Acts 1912 (1st Ex. Sess.) (2 Comp. Laws 1929, § 8431 [Stat. Ann. § 17.165]), made applicable to proceedings under occupational disease amendment by Act No. 10, pt. 7, § 10, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-10, Stat. Ann. 1941 Cum. Supp. § 17.229). The statutory basis of the department's decision is 2 Comp. Laws 1929, § 8456 (e) (Stat. Ann. § 17.191 [e]), the pertinent part of which is as follows:

"If any employer shall, after he has notice or knowledge of any accident happening to one of his employees, refuse or neglect to make any of the re-

***

* See footnote, *ante,* 510.

ports required by this section, neither he nor his insurer shall have the right to raise the defense of the statute of limitations  *  *  *  in any proceedings by injured employees, or their dependents, to recover compensation.''

Plaintiff interviewed an official of defendant employer May 6, 1940, after his condition had been diagnosed by the physicians at Ann Arbor.  Plaintiff asked this official whether he had any claim in the nature of compensation and he received the reply that he saw none available because he did not think there was the ''stuff in the finishing room.''  This official, though present at the hearing, did not take the stand.  The reference to the ''stuff in the finishing room'' demonstrates that the official had knowledge of the fact that the plaintiff attributed his condition to a substance in the room in which he had worked, and, therefore, the defendant employer cannot successfully claim in this case, as claimed by the employer in *Gumtow* v. *Kalamazoo Motor Express*, 266 Mich. 16, that, although informed of plaintiff's condition, the employer was not told that it arose out of and in the course of his employment.

Attorneys for defendant employer in their reply brief claim that the decision in *Veith* v. *Auto-Owners Ins. Co.*, 293 Mich. 446, holds that an employer makes a *prima facie* admission of liability by filing a report of a compensable accident and, therefore, argue that, where an employer believes that no compensable accident occurred and for that reason does not report it, it would be unjust to hold that the failure of such employer to file a report estops it from pleading the statute of limitations;* that an employer would be placed in a dilemma, being obliged either to report an accident which it believes

* See 2 Comp. Laws 1929, § 8431 (Stat. Ann. § 17.165).—Reporter.

did not exist and thus acknowledge its existence, or else not to report it and waive the statute. This would be a forceful argument were its premise correct, but we did not hold in the *Veith Case* that the department could treat every report of an accident as an admission by the employer. We held that even though the department had so treated the report in that case, no prejudicial error was committed since there was evidence supporting the conclusion of the department. A report can be made which negatives any admission of liability. See *Green* v. *Sears, Roebuck & Co.*, 280 Mich. 568.

In the instant case, the employer had knowledge of plaintiff's contention within 73 days after the occurrence of the disablement. It filed no report with the department and, therefore, is estopped to plead the statute of limitations.

Defendants further complain that there was no competent testimony that the occupational disease was due to causes and conditions characteristic of and peculiar to a particular trade, occupation, process or employment in which plaintiff was employed, in accordance with section 1 (Comp. Laws Supp. 1940, § 8485–1, Stat. Ann. 1941 Cum. Supp. § 17.220), or that it was due to the nature of the employment in which such employee was engaged in accordance with Act No. 10, pt. 7, § 3, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–3, Stat. Ann. 1941 Cum. Supp. § 17.222). While the language of these two sections is somewhat general in nature, it is controlled by the specific declarations of the schedule of diseases in section 2, in which "disabilities arising from * * * poisoning by benzol" and "caused by * * * any process involving use of or direct contact with benzol" are declared compensable. We can only read this language as a

legislative declaration that poisoning by benzol is characteristic of, peculiar to, and due to the nature of, employment wherein there is any process involving the use of or direct contact with benzol.

Defendants further claim that the department erred in holding that toxic encephalitis is one of the occupational diseases scheduled in section 2. The record, however, discloses no such holding. Both the medical commission and the department held toxic encephalitis the result of poisoning by benzol, which is scheduled. They mentioned toxic encephalitis simply by way of description of plaintiff's present and continued disabled condition.

Defendants complain that, although the original notice and application states the failure to agree on compensation for alleged disability under the occupational disease amendment (Act No. 61, *supra*), it only discloses that plaintiff was suffering from a disease known as toxic encephalitis, that there is no such disease listed as an occupational disease, and that the application and notice, therefore, could not be the basis for further proceedings. The application, however, was accompanied with a physician's affidavit stating that plaintiff on March 1st was suffering from a disease known as toxic encephalitis resulting from conditions described in numbers 7 and 8 of section 2 of the occupational disease amendment to the compensation law.

The workmen's compensation act is divided into parts, which are subdivided into sections. Part 7 was added in 1937, being the occupational disease act. Numbers are used solely in section 2 of part 7 (Act No. 61, *supra*). Caption 7 provides for disabilities arising from poisoning by wood alcohol caused by any process involving wood alcohol, et cetera. Caption 8 provides for disabilities arising from "poisoning by benzol or nitro-, hydro-, hy-

droxy-, and amido-derivatives of benzene (dinitrobenzol, anilin, and others) or its *sequelae*," and "caused by any process involving use or direct contact with benzol," et cetera. While the application and notice were crudely drawn, we believe that, with the affidavit attached, they were sufficiently informative. Defendants were not misled thereby. They made timely objections, which apparently were overruled. We believe the application and notice were sufficient under the circumstances.

Defendants claim there is no such disease known as toxic encephalitis, that plaintiff is suffering from sclerosis of the brain, et cetera. We are bound by the findings of fact of the department, there being evidence to support them.[*]

We have discussed the important questions raised. Others of no importance have so little merit that we need not discuss them.

The award is affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., took no part in this decision.

---

[*] See 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).—REPORTER.