### ROYAL INDEMNITY CO. v. JONES.

No. 11675.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 5, 1947.

Rehearing Denied March 12, 1947.

Second Rehearing Denied April 9, 1947.

Moursund, Ball, Moursund & Bergstrom and Charles W. Barrow, all of San Antonio, for appellant.

G. Woodson Morris, of San Antonio, for appellee.

NORVELL, Justice.

This is a workmen's compensation case. Royal Indemnity Company, the insurance carrier, has appealed.

The jury found that William Howard Jones, the appellee, sustained an accidental injury on July 18, 1945, while in the course of employment with Handy-Andy Community Stores, Inc., and that such injury was the producing cause of a permanent total incapacity. The jury also found that Jones had, within thirty days after July 18, 1945, notified E. C. Becker, Vice President of the employer corporation, or William Vogt, Jones' foreman, of his injury. The judge rendered upon the jury's findings awarded Jones compensation at the rate of $20 per week for two periods of time, that is, from December 7, 1945 (seven days after the date of the commencement of Jones' total disability as found by the jury), to July 12, 1946, the date of judgment, a total of $548.64, with interest, and for a further period of 354⅚ weeks from and after July 12, 1946.

Appellee testified that on July 18, 1945, he and other employees of Handy-Andy Community Stores, Inc., were installing overhead ammonia coils in a deep freeze room maintained by the Handy-Andy Company. He stated that while lifting or pushing upon one of these heavy coils, "I felt a burning sort of a pain hit me on my side and the back of my neck and travel down my back and inside of my leg. * * * It caused me to be sick at my stomach. A bitter saliva developed in my mouth and I spit it out." He further said that when he examined his side he noticed a bulge, that he pushed it in, but it came out again. Appellee's medical evidence was to the effect that he had developed or was developing a right inguinal hernia and

had sustained a rupture of an intervertebral disk, and that his disability was permanently total.

The evidence shows that appellee continued to work for the Handy-Andy Company until the middle of October, 1945, and that on November 9th he went to work for another company and continued in said employment until November 30th, the date upon which he became incapacitated, according to the jury's finding. On November 7th appellee was examined by a medical examiner, who found no physical defect except that appellee had weak sides, by reason of previous hernia injuries. Appellee was passed as fit for the employment which he undertook two days later. Appellee testified that since July 18, 1945, he had suffered no injuries of any kind, thus supporting the inference that the injury of that date was the producing cause of the physical condition described by his medical witnesses. From the record we can not say that the jury's finding, in accordance with the inference mentioned, was not supported by sufficient evidence, or was against the overwhelming preponderance of the evidence. 3 Tex. Jur. 1093–1100.

Appellee pleaded that he had received a hernia on his right side and injuries to his neck, back and legs, and that all of said injuries were permanent and lasting. Appellant here takes the position that the back injury is a "hernia" within the meaning of Article 8306, § 12b, Vernon's Ann.Civ. Stats., and compensable as a specific injury rather than a general injury. It is appellant's further contention that there was no evidence that the "hernia" appeared suddenly and immediately after the injury (Art. 8306, § 12b, par. 2) and consequently the trial court should have instructed the jury to find for appellant.

The medical evidence indicates that Jones suffered a rupture of an intervertebral disk. Intervertebral substance is defined in Webster's New International Dictionary as, "the tissue uniting the bodies of contiguous vertebræ. In man it forms disks of varying thickness, closely adherent to the surface of the bones, and composed of concentric laminæ of fibrous tissue and fibrocartilage with a soft pulpy substance

in the center derived from the notochord of the embryo. The disks serve as cushions protecting against shocks and allowing slight movements of the bones."

The medical testimony is in accord with the above definition or description, and to the effect that Jones suffered a rupture of the disk between the fifth lumbar vertebra and the first sacral vertebra. As to the effect of the injury, Jones' medical expert testified that, "when you part the membrane that keeps the disk material between the vertebræ, the material of the disks shoots through the break, * * * when an intervertebral disk collapses, it can only collapse in one direction, the material has to go somewhere, it can't go laterally, because the ligaments on each side are too strong * * * it doesn't break forward for the same reason, those ligaments are intensely tough, so it can only bulge backwards into the area where the spinal cord goes down." In the expert's opinion, pressure from the disk material was being exerted against the sciatic nerve at its roots in the spinal cord, causing severe pain and suffering and rendering Jones totally disabled.

■ In our opinion, the rupture of an intervertebral disk, although sometimes referred to as a "hernia nuculeus pulposus" is not a "hernia" within the meaning of that term as used in Article 8306, § 12b. In Lewis v. American Surety Co., 143 Tex. 286, 184 S.W.2d 137, 139, the broad definition of hernia is set out, but the Court said: "While the definition of hernia includes any and all protrusions of an internal organ from its natural location, it is evident that that term was used by the Legislature in its popular sense in the compensation statutes. Should an employee, for example, suffer an injury in the course of his employment producing a hernia of the brain, it is not believed that his right, or that of his beneficiaries, to recover compensation therefor should be limited and controlled by the specific provisions of the hernia statute. They cannot be made to apply practically to such an injury."

■ Further, it seems inescapable that the type of hernia contemplated by said Article 8306, § 12b, is one for which generally the standard and accepted remedial procedure is the radical operation. The medical testimony in this case indicates clearly that a surgical operation is not the accepted or standard procedure for repairing a rupture of an intervertebral disk, and that an operation is resorted to only in extreme cases, where the patient is "having so much pain that it is better to take a chance and operate."

■ We hold that the pleadings and evidence are sufficient to support the theory of recovery submitted by the trial court to the jury, and that the motions for an instructed verdict and for judgment non obstante veredicto were properly overruled.

■ We are also of the opinion that the trial court properly refused appellant's requested special instruction, to the effect that in considering the question of appellee's general incapacity the jury should not "take into consideration any testimony relating to hernia." From what has been said it follows that this is a general injury case. Evidence that one of the results, among others, of Jones' lifting or pushing upon the ammonia coils was a complete or incomplete inguinal hernia has a bearing upon the issue of disability and the extent thereof. Petroleum Casualty Co. v. Seale, Tex.Com.App., 13 S.W.2d 364; Texas Employers' Insurance Ass'n. v. Shackelford, Tex.Civ.App., 158 S.W.2d 572, reversed upon other grounds, 139 Tex. 653, 164 S.W.2d 657.

■ A duplicitous method was employed in submitting the issue of notice of injury to the jury under Article 8307, § 4a, in that it inquired as to whether appellee notified or told E. C. Becker, Vice-President of the Handy-Andy Company, or William Vogt, a foreman employed by the company, that he had been injured. The issue covered two separate occurrences or transactions. Appellee testified that he informed Becker of his injury immediately after it took place. Becker denied this, and testified that he had instructed Jones to do no lifting as he had other employees present for that purpose, and that he did not see Jones doing any heavy lifting in

connection with the installation of the ammonia coils. The evidence as to notice to Becker is conflicting, but clearly sufficient to sustain a finding of notice.

It appears that Vogt was Jones' immediate superior and his primary duties were those of a refrigeration maintenance man for the various stores and plants of the Handy-Andy Company. Jones was Vogt's helper or assistant. On July 18, 1945, both Vogt and Jones were present at the time of the installation of the ammonia coils. Vogt testified that he was in and out of the room. It appears that E. C. Becker was in general supervision of the work relating to the installation of the coils. Upon cross-examination, Vogt said that he had a definite recollection of seeing Jones standing on a saw horse pushing up on the ammonia coils with other workmen. He further testified as follows:

"Q. Jones told you later that he got hurt that day? A. One morning, I think, a day or so afterwards, we were going out on a call and he said something, he said he believed that he had hurt himself there.

"Q. At the time he was pushing on those coils? A. That is what he said.

"Q. That was two or three days later, you say? A. It might have been the next morning after we got through."

Appellee testified as follows:

"Q. Repeat what you told Mr. Becker about your being hurt. A. I told Mr. Becker that I had hurt my side, neck and back and that I couldn't lift any more.

"Q. Did you tell Mr. Vogt anything about that the next day, Mr. William Vogt? A. I told Mr. Vogt about it. We were on the way out to another store, the exact location, I don't recall."

■ In our opinion the evidence is sufficient to support a finding that Jones told Vogt, his foreman, that he had sustained an injury at the time of the installation of the ammonia coils. Article 8307, § 4a, does not prescribe any particular form of notice, and it has been held that oral notice to a foreman is sufficient. Texas Indemnity Co. v. Avant, Tex.Civ.App., 171 S.W.2d 915; Texas Employers' Ins. Ass'n

v. Bradshaw, Tex.Civ.App., 27 S.W.2d 314, writ refused; 71 C.J. 979, § 764. See, also, Booth v. Texas Employers' Ins. Ass'n, 132 Tex. 237, 123 S.W.2d 322; Annotations, 78 A.L.R. 1232, and 92 A.L.R. 505, particularly Texas cases cited therein.

■ The fact that at the particular time of Jones' alleged injury E. C. Becker, Vice-President of the Company and Vogt's superior, was present and actively directing the work of installing the coils would not prevent Jones' notice to Vogt, his immediate and regular superior, from being effective as notice to the company.

■ ■ Since the evidence is sufficient to support a finding that Jones notified Becker of the injury and is likewise sufficient to support a finding that Jones notified Vogt of the injury, the duplicitous form of submission employed did not operate to appellant's injury and the error is harmless.

Appellant also contends that this cause should be reversed for new trial by reason of newly discovered evidence. It appears that Dr. Keating, appellee's medical expert, used certain X-ray pictures in connection with his testimony to the effect that appellee had suffered a rupture of an intervertebral disk. Although appellant states in its motion for new trial, that the existence of these X-ray pictures was unknown to it at the time of the trial and their use operated as a surprise, the statement of facts indicates that no surprise was claimed at the time testimony was being taken. The X-ray pictures were admitted in evidence without objection and no motion made to allow appellant the time and opportunity to have these X-ray pictures examined by a medical expert. In the motion for new trial it is said, that a Dr. Giles made certain of these X-ray pictures. Attached to the motion is a report of Dr. Giles, interpretation of the pictures which tends to contradict Dr. Keating's diagnosis. Dr. Giles is of the opinion that Jones is suffering from ostro-arthritis rather than a rupture of an intervertebral disk.

■ We are here concerned with expert opinion testimony, and the showing made would not authorize us to reverse

the case for an abuse of discretion, it appearing that the "new evidence" consists of an expert, discovered after the trial, who is willing to state an opinion contrary to that of witnesses who actually appeared and testified as to the interpretation of duly admitted evidence, such as X-ray pictures and the like.

Appellant also states that it discovered additional new evidence after the trial, in that it can procure a witness who would contradict appellee's testimony in certain particulars. We need not discuss this contention in detail. Under the rule followed by this Court, no reversible error is disclosed by the trial court's refusal to grant a new trial because of newly discovered evidence. San Antonio Gas Co. v. Singleton, 24 Tex.Civ.App. 341, 59 S.W. 920; Texas Employers' Ins. Ass'n v. Moser, Tex.Civ.App., 152 S.W.2d 390.

The eighth ground of appellant's motion for new trial, which is made the basis of a point of error, is as follows: "That the judgment entered herein is defective in that the number of weeks which plaintiff is entitled to total incapacity from the 12th day of July, 1945, is incorrectly computed. The judgment reads: 'and further that said plaintiff do have and recover of and from said defendant the additional sum of Twenty Dollars ($20.00) per week for a period of three hundred fifty-four and five-sixths (354⅚) weeks from the 12th day of July, 1946,' whereas the number of weeks remaining should be three hundred fifty (350) weeks from the 12th day of July, 1946."

We sustain appellant's point. Judgment should have been rendered according to the computation set forth in appellant's motion for new trial. Texas Employers' Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900; Trader's & General Ins. Co. v. Baker, Tex.Civ.App., 111 S.W.2d 837.

The amount awarded in the judgment below was probably the result of an error in mathematical calculation, but as the mistake was pointed out in the motion for new trial filed in the court below, the costs of appeal are charged against appellee. United Employers Casualty Co. v. Barker, Tex.Civ.App., 148 S.W.2d 260.

The judgment of the trial court is reformed so as to provide for a recovery of the sum of $20 per week for a period of 350 weeks (instead of 354⅚ weeks) from the 12th day of July, 1946. As reformed, the judgment is affirmed.