Floyd J. PETRAY, Appellant,

v.

The TRAVELERS INSURANCE COMPANY, Appellee.

No. 7625.

Court of Civil Appeals of Texas.

Texarkana.

July 20, 1965.

Rehearing Denied Sept. 21, 1965.

712

Wm. V. Brown, Jr., Texarkana, for appellant.

Norman Russell, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellee.

CHADICK, Chief Justice.

This is a workmen's compensation case. The judgment of the trial court is reversed and the case is remanded for new trial.

The appellant, plaintiff in the trial court, Floyd J. Petray, sued appellee, defendant below, The Travelers Insurance Company, compensation insurer for his employer, International Creosoting & Construction Company. In the trial court when Petray had finished with the introduction of evidence a motion by the insurer for an instructed verdict in its favor was granted.

The appellee's counterpoints and crosspoint of error will serve to put the main issue of this appeal in clear perspective and for that purpose are quoted, to-wit:

(Counterpoints) "The trial court correctly granted Travelers' motion for instructed verdict because:

(a) Petray's petition failed to state a cause of action upon which recovery of workmen's compensation benefits could be based. He did not allege and prove the receipt of an occupational disease within the meaning of Article 8306(20) V.A.T.S., instead he claims workmen's compensation benefits for incapacity from Bronchitis (both chronic and asthmatic), Pulmonary Fibrosis, and Emphysema—none of these being among the occupational diseases appearing in the statute.

(b) Petray in the District Court claimed workmen's compensation benefits based upon the effects of arsenic, benzol, and chlorine poisoning, but in his claim before the Industrial Accident Board he made no claim for benefits upon this basis. He cannot assert one claim before the Industrial Accident Board and another and different claim in the District Court."

(Crosspoint) "Point 1: The trial court erred in overruling Travelers' Special Exceptions No. 1 and No. 2, both being directed to Petray's failure

to allege facts upon which he could sustain a recovery for workmen's compensation benefits as a result of having an occupational disease."

Mr. Petray filed a "Notice of Injury from Occupational Disease and Claim for Compensation for Injury from Occupational Disease" with the Industrial Accident Board on a form furnished him by the Board. In answer to this question therein, "Nature of Occupational Disease and Cause of Disease", Mr. Petray said, "My disease is Asthmatic Bronchitis, Pulmonary Fibrosis and Emphysema. I have choking spells and cannot breathe well. The cause is from breathing the dust and irritants in the mill where I work". With reference to the notice provisions of Art. 8307, sec. 4a in Texas Employers' Ins. Ass'n v. Bradshaw, 27 S.W.2d 314 (Ct.Civ.App.1930, writ ref.) it was said:

"* * * [T]he object of the provision of timely notice is to enable the insurer to make his own investigation of the facts upon which the employee grounds his claim for compensation. It seems equally obvious that in order to strictly comply with the statutory requirement the employee must, within the specified period, apprise the insurer of the time and nature of the accident as well as of the resulting injury."

Very similar conclusions are expressed in Safety Casualty Company v. Brown, 229 F.2d 889; and Booth v. Texas Employers' Ins. Ass'n, 132 Tex. 237, 123 S.W.2d 322, op. adpt. In the latter case Commissioner Smedley said:

"It has repeatedly been held that, although one claim cannot be filed with the board and another and different claim asserted in court, yet when the injury suffered is of that class of injuries, sometimes called general injuries, for which the compensation is based upon incapacity to work, and not of that class of injuries usually called specific injuries, for which the amount

of compensation is fixed by the statute, a general description of the injury is sufficient in the claim made before the board, and that in the suit filed to set aside the award of the board the claim may be enlarged to include all injuries proximately resulting from the accident. Hartford Accident & Insurance Co. v. Choate, 126 Tex. 368, 373, 89 S.W.2d 205; Texas Employers' Insurance Association v. Knouff, Tex.Civ. App., 271 S.W. 633; Indemnity Ins. Company of North America v. Harris, Tex.Civ.App., 53 S.W.2d 631; Great American Indemnity Company v. Mc-Elyea, Tex.Civ.App., 57 S.W.2d 966. In each of the three cases last cited application for writ of error was refused."

Occupational disease is not listed as one of the specific injuries enumerated in Art. 8306, Sec. 12, Vernon's Ann.Tex.Civ.St., so such disease must be placed in the general injury grouping. The question of primary importance in this appeal is whether or not the Petray notice and claim as quoted above meets the legal test of Notice to the Board of an occupational disease compensable under the Workmen's Compensation Law by giving a general description of the disease implicated. A question of this kind arising in an occupational disease case has not reached the appellate courts of Texas. The disposition of similar questions in general injury compensation cases, and the decisions of other jurisdiction in occupational disease cases, should be instructive and on examination should suggest the correct answer in this instance.

A workman's notice to the Texas Industrial Accident Board that described his impairment "as injury to my spine and leg injury" was held sufficient, as a general description of injury, and in the appeal from the Board to a district court the workman was said to be entitled to plead and prove "injury to the sacroiliac joint" in Indemnity Ins. Company of North America v. Harris, 53 S.W.2d 631 (Tex. Civ.App.1932, no writ). This case was

later cited as an authority in Hartford Accident & Indemnity Co. v. Choate, 126 Tex. 368, 89 S.W.2d 205 (opinion adopted). The compensation claimant in Texas Employers' Insurance Ass'n v. Knouff, 271 S.W. 633 (Ct.Civ.App.1925, writ ref.) described her injury in her notice as "[d]islocation of one kidney and badly jarred all over". On appeal from the Board to the court her petition stated "that by reason of said fall her spine and the nerves and muscles connecting therewith were injured and bruised, and the nerves and muscles in the pelvic region and in her back were torn, bruised, lacerated, and strained". The description in the Notice was held sufficient.

Texas Indemnity Ins. Co. v. Wilson, 281 S.W. 289 (Tex.Civ.App.1926, writ dism.) does not set out the description of the injury, the opinion saying the evidence in the trial court was meager as to the exact nature of the injury reported to the Industrial Accident Board, but the court said, "[I]t is evident it was the same claim, occurred at the same time, and grew out of the same accident, and on appeal to the courts appellee had the right to amplify and more fully develop his claim by pleading and evidence". The nature of the injury reported to the Industrial Accident Board is "hernia, also pains in back and left side" in Texas Employers' Ins. Ass'n v. Perry, 35 S.W.2d 1087 (Ct.Civ.App.1931, writ ref.). The insurance carrier in the district court moved to abate the workman's action, except for the specific injury of hernia. The claimant was permitted to plead and prove, besides a hernia, that "his back and left side were wrenched and all bones, nerves, tissues", etc., were torn and injured. The court held the notice sufficient and that the workman might amplify, as he did, and make more specific the injuries he described in the claim presented to the Board.

For what it may be worth, the attitude of other jurisdictions will be examined. An employee filed with Michigan's Department of Labor and Industry an occupational disease law claim against the St. Johns Table Company. The claim stated the employee was suffering from "the disease known as toxic encephalitis". Accompanying the Notice was a physician's report that employee's toxic encephalitis arose from poisoning by wood alcohol and by benzol, a derivative of benzine, or its sequelae. Toxic encephalitis is not listed as an occupational disease in the Michigan statute, but poisoning by benzol, etc., is so classified. The Supreme Court of Michigan in Nicholas v. St. Johns Table Company, 302 Mich. 503, 5 N.W.2d 442, held the notice to be sufficient. In another Michigan case, Krzewinski v. Robert Gage Coal Co., 304 Mich. 63, 7 N.W.2d 223, it is stated that niceties of expression are not required, all that is necessary is that the employer have notice that the employee claims to be disabled by an occupational disease.

The Workmen's Compensation Act in Illinois provides that no proceedings for compensation under the Act shall be maintained unless an injured employee gives notice of an accident within 30 days of its occurrence. In a case in that jurisdiction, notice by an employee was given to his employer that he was disabled and very sick. Raymond v. Industrial Commission, 188 N.E. 861. Later it was established that the employee was suffering from lead poisoning. Under the facts of the case, the court held that although the notice may have been defective in not mentioning lead poisoning, the employer was not prejudiced by the omission.

Two occupational diseases are specified by medical name in Article 8306, Sec. 20 *,

---

* Art. 8306, Section 20:
    Wherever the terms 'injury' or 'personal injury' are used in the Workmen's Compensation Law of this state, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom. Unless from the context the meaning is clearly to the contrary, such terms shall also be construed to mean and include occupational diseases, as hereinafter defined. The following

the remainder are listed as certain diseased conditions and the morbid condition resulting from specified causes; for example, diseases known as "asbestosis" and "silicosis" are set out by name, "compressed air illness", a diseased condition, is specially named, while poisonings caused by any of 31 named substances are set out as unnamed diseases. The statute's composition refutes any suggestion that a disease not listed by its medical name cannot be an occupational disease. On the contrary a reasonable construction of the article is that any disease listed by name, any diseased condition described, and any disease caused by the toxic agents or by conditions and agents specified are occupational diseases and compensable if otherwise within the terms of Art. 8306, Sec. 25. The

Supreme Court of Oklahoma in National Zinc Company v. Hainline, 360 P.2d 236, construed a subdivision of the Oklahoma statute that is very similar to Art. 8306, Sec. 20(a) (listing poisonous substances that may cause a compensable disease), and held: "The terms of this enactment do not restrict its applicability to any specified pathology produced by exposure to the enumerated toxic substances. The provisions only designate the source from which harm must originate and declare that 'poisoning' thereby shall constitute a compensable disease".

■ If the above construction of Art. 8306, Sec. 20(a) is correct, Mr. Petray's statement in his Notice and Claim that his occupational disease was Asthmatic Bron-

diseases only shall be deemed to be occupational diseases:

(a) Poisoning by: (1) Aluminum Trioxide; (2) Arsenic; (3) Benzol or its homologues and derivatives; (4) Beryllium; (5) Cadmium; (6) Carbon Bisulphide; (7) Carbon Dioxide; (8) Carbon Monoxide; (9) Chlorine; (10) Cyanide; (11) Formaldehyde; (12) Halogenated Hydrocarbons; (13) Hydrochloric Acid; (14) Hydrofluoric Acid; (15) Hydrogen Sulphide; (16) Lead; (17) Manganese; (18) Mercury; (19) Methanol (Wood Alcohol); (20) Methanol Chloride; (21) Nitrous Fumes; (22) Nitric Acid; (23) Petroleum or Petroleum Products; (24) Phosphorus; (25) Selenium; (26) Sulphuric Acid; (27) Sulphuric Dioxide; (28) Sulphur Trioxide; (29) Tellurium; (30) Thallium; (31) Zinc;

(b) Anthrax caused by handling of wool, hair, bristles, hides and skins;

(c) Blisters caused by prolonged or repeated use of tools or mechanical appliances;

(d) Synovitis, Tenosynovitis, or Bursitis due to an occupation involving continual or repeated pressure on the parts affected;

(e) Chrome ulceration;

(f) Compressed air illness;

(g) Dermatitis; that is, inflammation of the skin due to oil, cutting compounds or lubricants, dust, liquids, fumes, gases or vapors;

(h) Diseased condition caused by exposure to x-rays or radioactive substances;

(i) Diseased condition of the eyes due to electric arc and welding, and cataract in glass workers;

(j) (Epitheliomatous cancer) or ulceration of the skin or the corneal surface of the eye caused by tar, pitch, bitumen, mineral oil or paraffin or any compound, product or residue of any of these substances;

(k) Glanders and other diseased conditions caused in handling any equine animal or the carcass of any such animal;

(l) Infectious or contagious disease contracted in the course of employment in or in immediate connection with a hospital or sanatorium in which persons or animals suffering from such disease are cared for or treated;

(m) Nystagmus incurred in underground work;

(n) Asbestosis;

(o) Silicosis;

(p) Psittacosis (ornithosis) caused by the handling or processing of meat and poultry. Added Acts 1947, 50th Leg., p. 176, ch. 113, § 2, as amended Acts 1955, 54th Leg., p. 662, ch. 233, § 1.

Prior to 1947, incapacity occasioned by occupational disease was not compensable. In that year the Workmen's Compensation Act was amended by Senate Bill 40, Regular Session, 50th Legislature, to cover occupational disease. It may be of interest, but of no significance, that the author of this opinion was the legislative author of the occupational disease amendment.

chitis, Pulmonary Fibrosis and Emphysema, and that he had choking spells and could not breathe well, generally described a disease or pathological condition that, under the evidence in this case, is an occupational disease. It may be conceded that the diseases described by the medical terms used are not specifically named in Art. 8306, Sec. 20, and in some instance may originate from cause other than as listed in the statute, yet if the pathological condition the notice described is, or may be, the result of exposure to the toxic agents listed in the statute, such condition is an occupational disease within the terms of the statute. Whether or not the condition underlying the claim is compensable is a question of fact subject to proof. Specific injuries aside, the general injury cases mentioned earlier indicate that a general description of injury in the Notice of Claim is sufficient when it asserts a hurt or injury to some area of the body. The cases manifest no requirement that the notice do more than describe an injury that is potentially compensable; there is no indication that the claimant must negative any fact that might render incapacity from the described injury noncompensable. The occupational disease cases from other jurisdictions do not seem to require the employee giving notice of an occupational disease claim to positively identify the disease involved, unless failure to do so in some way nullifies the purpose of notice.

■■ In conformity with the principle that the Workmen's Compensation Act will be liberally construed, the diseases named and the description of a pathological condition given in Mr. Petray's Notice are adequate. The Board, the insurer, and the employer are notified that Petray is claiming to be incapacitated by a respiratory ailment that he claims is compensable as an occupational disease. It would be an extremely strict construction, and it is doubtful that diagnostic skill would be equal to the burden, to require the workman to describe his occupational disease in terms that would exclude every hypothesis except

that the disease is one compensable under the law.

It is uncontradicted in this record that Mr. Petray for many years was exposed to and breathed wood dust, particles, etc., impregnated with arsenic, benzol, its homologues and derivatives, and chlorine. A qualified witness testified that such exposure caused pulmonary fibrosis, Mr. Petray's incapacitating illness. There is no evidence that the other diseases and conditions claimed could not have originated in causes listed in Article 8306, sec. 20.

The conclusions expressed resolve the issues briefed. The judgment of the trial court is reversed and the case remanded for trial on its merits.

