**The CHARTER OAK FIRE INSURANCE COMPANY, Appellant,**

v.

**Ysidro C. PEREZ, Appellee.**

**No. 15466.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Oct. 16, 1969.

Rehearing Denied Nov. 13, 1969.

Vickery & McConnell, Charles R. Vickery, Jr., Houston, for appellant.

Tabor & Ray, Carl L. Ray, Houston, for appellee.

PEDEN, Justice.

Occupational disease case under the Workmen's Compensation Insurance Act. The carrier has appealed from the judgment based on a jury finding that the claimant was totally and permanently dis-

abled by having been poisoned by certain substances he had inhaled.

Perez was employed by Todd Shipyards Corporation, where he had worked for several years as a welder.

In answering the special issues submitted to it, the jury found: 1) Perez sustained an occupational disease by reason of poisoning by carbon dioxide, or carbon monoxide or nitrous fumes or zinc or all or any combination of said substances, 2) such occupational disease was sustained by Perez while he was employed by Todd, 3) it was the producing cause of total disability, 4) the total disability was permanent, 5) it began on December 11, 1966, 7) the occupational disease was not found to be a producing cause of any partial disability, 11) the occupational disease was due to the nature of his employment, in which the hazards of such disease actually exist, 12) the occupational disease is characteristic of the claimant's employment with Todd and is peculiar to his trade, occupation, process or employment, 13) his disability began within one year of his last injurious exposure to the hazards or causes of the disease, 14) Todd had notice within thirty days of the first distinct manifestation of the occupational disease, 17) the occupational disease is aggravated by emphysema, pneumoconiosis or essential hypertension, 18) the occupational disease bears a 100% proportion as a causative factor to all the causes of the claimant's incapacity, 19) his incapacity from emphysema, hypertension or pneumoconiosis is aggravated, prolonged, accelerated or contributed to by the occupational disease, 20) such occupational disease, as a causative factor, bears a 100% proportion to all the causes of the claimant's incapacity and 21) when Perez sustained the occupational disease, he was not found by the jury to have been suffering from a prior existing disease, impairment or condition of his lungs which is the sole cause of his incapacity.

■ We overrule the point of error by which appellant complains that the first special issue was submitted alternatively, specifically and globally at the same time. The transcript contains an instrument which reflects that counsel for both parties and the trial judge agreed that objections to the charge might be dictated and considered as having been timely filed. The record does not show, however, that the transcribed objections were presented to the trial judge so that he could endorse on them his official signature as required by Rule 272, Texas Rules of Civil Procedure, so we cannot consider them. Big Three Welding Co. v. Roberts, 399 S.W.2d 912, 918 (Corpus Christi Tex.Civ.App.1966, writ ref., n. r. e.); Texas General Indemnity Co. v. McNeill, 261 S.W.2d 378 (Beaumont Tex.Civ.App.1953, no writ); State v. Turboff, 431 S.W.2d 953 (Houston 1st Tex. Civ.App., 1968, no writ).

■ Appellant raises "no evidence" and "great weight of the evidence" points of error as to the jury's answers to Special Issues 1, 3, 11, 12, 13, 18 and 20.

Mr. Lenamond, a welding and metallurgical consultant, described the production of carbon monoxide and carbon dioxide in welding and testified that zinc oxide fumes are among the fumes produced when welding is being done on galvanized mild steel; that the fumes make welding very dangerous in areas where the ventilation is inadequate. Mr. Perez related that he had been welding on that type of steel before and during the period when he became ill, December 6 to December 11, 1966, and that it was his welding on the galvanized steel and the zinc that made him sick. Also, that he had been welding in poorly ventilated areas on barges that were being built.

Dr. F. J. Gibson testified that Perez has a lung condition which has progressed to the point that almost any type of dust or fumes will irritate his bronchial tubes and cause him to have an asthma attack. He testified on direct examination by Mr. Ray:

Q "Now, Doctor, taking into consideration your examination and treatment of

the—and the history given to you by Mr. Perez and further taking into consideration the hypothetical situation that—that—that this man was welding on his job and that while he was welding he was in—many times in an area of close ventilation or at least limited ventilation—taking also into consideration that as a result of this welding there were certain gases or fumes known as carbon monoxide, carbon dioxide, and nitrous fumes excreted from this weld while welding in this close area—based upon those facts Doctor, do you have an opinion concerning the causation or the cause of the condition which you have found in Mr. Perez?

A  "I would say this would precipitate a crisis—I might say it might cause—be the primary cause.

Q  "What, in your opinion, Doctor, would in—or did in Mr. Perez's case, cause the condition which you found him to be—upon your examination of him?

A  "I'd say an inhalation of some sort has caused him to have the damage to his lungs.

Q  "Would this inhalation be in the form of poisoning by some of these substances I have mentioned or any or all?

A  "If he were to breath these it would poison him.

Q  "By those poisons—Doctor, would that poisoning result in his condition as it exists here today and as it existed upon your examination of him?

A  "Yes, sir.

Q  "Now, Doctor, with reference to your examination of him and your conclusions, have you any conclusions other than this reflected in the hospital records concerning Mr. Perez's condition or the condition of his body?

A  "I believe that Mr. Perez will be permanently disabled from working around any type of material that puts off fumes or a dust of any kind of a material that will irritate the lining of his lungs.

Q  "Could he now, in your opinion, Doctor, do work where he would be susceptible to dust or—or any type of irritant in the air?

A  "No, I wouldn't advise him to work under those conditions.

Q  "Would he be able to do that without injuring his body further?

A  "He would be unable to.

Q  "Now Doctor, with reference to your diagnosis that you have before you there that were made at the time of admission to the hospital, will you tell the jury, please, sir, exactly what your diagnosis is—that is chronic bronchitis is one and asthma and emphysema—explain and tell the jury if those are diseases in and of themselves or are they conditions of the body?

A  "Emphysema is a condition of the body such as the dimming of vision and graying of hair—it is an aging process. It can be accelerated by fumes or conditions such as diabetic condition or asthma brought on by bronchitis which is an infection that produces the asthma—the asthma itself is a narrowing of the tube from your upper respiratory down to the very parts of your lungs where the carbon monoxide and oxygen interchange.

Q  "Now, with reference to bronchitis—what is bronchitis?

A  "It is an irritation of the bronchio and the bronchio subdivisions.

Q  "Is bronchitis a disease caused by a virus or disease itself or is bronchitis a result of irritation?

A  "All three.

Q "Could you explain to the jury what your opinion is concerning the causes or the causation of the bronchitis, if any, that you found in Mr. Perez?

A "Based on his history—his working conditions.

Q "Yes, sir. Could you tell the jury, in your opinion, what the cause of that was?

A "Mr. Perez—if he were to breath any kind of fumes like the powder you use or perfume you use, he would begin to have an asthma attack regardless where the fumes came from or what they are—molecular or whatever size they are, he would go into an acute asthma attack.

Q "Taking into consideration, Doctor, the fact that—or the hypothetical situation, when you first examined Mr. Perez the past history would show that he was asymptomatic as far as respiratory diseases are concerned—is that correct?

A "I didn't hear the first of your question.

Q "With reference to your history, did Mr. Perez give you any previous history of asthma, bronchitis or emphysema or upper respiratory disease?

A "When I saw him, as I remember, the last—about six years before when he went to work for the company, at that time he had an examination—as near as I remember he had no limitation of his lungs when he was hired."

On cross-examination Dr. Gibson testified that Perez has chronic bronchitis, asthma and emphysema. He stated that he did not know what caused the primary lung condition of Perez, then later said it was caused by dust of undetermined origin. Later, on re-direct examination, he testified:

Q "I'm not trying to infer anything, Doctor, but you testified on direct examination he has a condition in his lungs assuming the assumptions we made on direct that you have these particular materials in these fumes, in your opinion the condition of his lungs—the primary condition of his lungs was caused by the breathing of those fumes?

A "Yes, right then he has the ability to go into such condition if he's breathing an over-concentration of smoke.

Q "and that condition is caused by what that you know about?

A "Chronic irritation—

Q "And that chronic irritation being?

A "From his history.

Q "Yes?

A "Fumes from the welding machine."

Dr. Bunting testified that Perez had pneumoconiosis due to his having inhaled some kind of particulate matters. He could not say whether zinc particles caused the lung disease, but it was not caused by gases, even though they are harmful to the lungs. Zinc is a metal and can produce nodular fibrosis and pneumoconiosis.

Hospital records were introduced covering the five times Perez was hospitalized beginning December 11, 1966 and ending May 9, 1967. The final diagnoses were that he had acute bronchitis and asthma, and on one occasion, pneumonia.

We have reviewed the entire record, and we find that the answers of the jury to Special Issues 1, 3, 11, 12 and 13 are not contrary to the great weight of the evidence. It necessarily follows that we also overrule appellant's "no evidence" points as to the answers to these issues. Appellant cites Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex. Sup.1966), as requiring testimony by a doctor as to the producing cause of the disability, based on reasonable medical probability. In that case the court held that the testimony of expert medical pro-

fessionals is necessary to support an inference that a pre-existing tumor was activated and the deadly effects of a malignancy were accelerated by an injury. Further, that the causal connection in that fact situation must rest in reasonable probabilities. "Reasonable probability, in turn, is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase." The opinion notes that those (cited) decisions in workmen's compensation cases in medical situations not involving the highly uncertain medical problem of the nature, origin and aggravation of cancer, are not controlling. See page 714 of the opinion.

■ We hold that Dr. Gibson's testimony, coupled with that of Perez and Lenamond constitutes competent and sufficient evidence of the producing cause of the occupational disease.

■ Appellant's fourth point complains of the exclusion of certain evidence. A Mr. Moore, the director of personnel and labor relations for Todd Shipyards Houston Division, was being questioned by Mr. Vickery when the following transpired:

Q "Have you been familiar—have you been employing the welders at the shipyard and been in the department that has been doing it now for 16 years?

A "Yes, sir.

Q "Is this the first time you have ever had a claim for a lung injury from a welder?

"MR. RAY: Objection. That's irrelevant and immaterial.

"THE COURT: Sustained.

"MR. VICKERY: Your Honor—

"THE COURT: I sustained it.

"MR. VICKERY: May I have my exception and have him answer it for the Bill?

"THE COURT: The jury will go back and wait in the jury room for a few minutes.

"MR. VICKERY: Your Honor, may I submit authorities—

"THE COURT: No.

(Jury out.)

"THE COURT: Show the jury is out. Read him the question back.

(Whereupon the last question was read back.)

Q "(By Mr. Vickery)—In your sixteen years experience at the Houston Division?

A "Yes, sir.

Q "Is this the first time you have ever had a claim of—an occupational disease claim in your sixteen years experience at the shipyard?

A "Yes, sir.

Q "Have you been familiar with all the workmen's compensation claims and all the other claims filed at the Houston Division since 1952?

A "Yes, sir.

Q "And is this the first one that has been claimed or filed?

A "Yes, sir.

"MR. VICKERY: No further questions for the Bill."

Appellant contends that the excluded testimony was relevant and persuasive on Special Issues 11 and 12, and cites Texas Employers' Insurance Association v. Etheredge, 154 Tex. 1, *272 S.W.2d 869* (1954), in which it was suggested that circumstantial evidence as to the conditions calculated to cause or abet silicosis might include proof of injury to other employees on the job.

We overrule this point. Only the question asked in the presence of the jury and

its answer were preserved for appellate review, and after reviewing the entire record in this case we conclude that if it was error to exclude the answer, it probably did not cause the rendition of an improper verdict. The absence of a previous claim for lung injury is a circumstance which affords very little, if any, basis for a reasonable presumption that Perez' sustaining of an occupational disease was not due to the nature of his employment, that the hazards of the disease do not exist in the nature of his employment or that such disease is not characteristic of his employment and peculiar to it.

■ Appellant's eighth point of error is that the trial court erred by entering judgment based on Special Issues 18 and 20 and in failing to disregard and set aside the jury's answer to such issues because 1) there is no evidence to support the jury's answers and 2) the jury's answers are so against the great weight of the evidence as to be clearly wrong.

We overrule the eighth point. Issue No. 18 was predicated on an affirmative answer to Issue 17, and Issue 20 was predicated on an affirmative answer to Issue 19. Dr. Gibson testified that Perez had neither pneumoconiosis nor essential hypertension, and the jury was entitled to conclude from his testimony that an essential part of Perez' occupational disease (his basic lung condition) was the acceleration of his emphysema (an aging process) by his asthma, which had been brought on by constant irritation of his bronchia caused by his breathing fumes from the welding process. We hold that such evidence supports the jury's answer to Issue No. 18. The only problem is caused by the issue's asking whether Perez' occupational disease was aggravated by emphysema when there was evidence that it was in fact one of the manifestations of the poisoning effect of the named substance.

■ Appellant's tenth point is that the jury's answers to Issues 17 and 18 are in conflict and both cannot stand; that in Issue 17 the jury found non-compensable diseases aggravating the occupational disease, yet, in fatal conflict, found in Issue 18 that the occupational disease was the 100% cause of incapacity.

Appellant's eleventh point asserts that there is a similar fatal conflict between the jury's answers to Issues 19 and 20.

Our decision to overrule the tenth and eleventh points is based on the same reasons which caused us to overrule the eighth one. If emphysema is one effect of the occupational disease brought about by Perez' having breathed the gases and particulate matter inquired about in Special Issue No. 1, then the jury was entitled under the evidence in this case to find that it was the causative factor of his incapacity. If the evidence is viewed in this light the answers to the issues in question are not in conflict.

In a case brought to determine the sufficiency of a "notice of injury from occupational disease and claim for compensation for injury from occupational disease", Chief Justice T. C. Chaddick wrote for the Texarkana Court of Civil Appeals:

"Two occupational diseases are specified by medical name in Article 8306, Sec. 20, the remainder are listed as certain diseased conditions and the morbid condition resulting from specified causes; for example, diseases known as 'asbestosis' and 'silicosis' are set out by name, 'compressed air illness', a diseased condition, is specially named, while poisonings caused by any of 31 named substances are set out as unnamed diseases. The statute's composition refutes any suggestion that a disease not listed by its medical name cannot be an occupational disease. On the contrary a reasonable construction of the article is that any disease listed by name, any diseased condition described, and any disease caused by the toxic agents or by conditions and agents specified are occupational diseases and compensable if

otherwise within the terms of Art. 8306, Sec. 25. * * *

"If the above construction of Art. 8306, Sec. 20(a) is correct, Mr. Petray's statement in his Notice and Claim that his occupational disease was Asthmatic Bronchitis, Pulmonary Fibrosis and Emphysema, and that he had choking spells and could not breathe well, generally described a disease or pathological condition that, under the evidence in this case, is an occupational disease. It may be conceded that the diseases described by the medical terms used are not specifically named in Art. 8306, Sec. 20, and in some instance may originate from cause other than as listed in the statute, yet if the pathological condition the notice described is, or may be, the result of exposure to the toxic agents listed in the statute, such condition is an occupational disease within the terms of the statute. Whether or not the condition underlying the claim is compensable is a question of fact subject to proof. * * " Petray v. Travelers Insurance Company, 393 S.W.2d 711 (1965, writ ref., n. r. e.).

■ Appellant's ninth point states that the trial court erred in finding for appellee in the amount of $2,069.10 for medical, hospital and medicine expense because 1) there was no evidence, or 2) insufficient evidence and 3) the issue should have been submitted to the jury; appellee's failure to request its proper submission constitutes a waiver.

We overrule the point. The judgment recites that the court found that Perez was entitled to recover from appellant the sum of $2,069.10, being his expenses for medical aid, hospital services and medicines during the six month period immediately following the first distinct manifestation of his occupational disease. No issue was submitted to the jury on this subject, and the record shows no exception to the omission. The trial judge's finding did not allow a recovery for any items possibly occasioned by treatment of an ailment which the doc-

tor indicated he could not say was related to the claimant's occupational disease. The trial court had a right to make the finding as to this expense. Cochran v. Wool Growers Central Storage Company, 140 Tex. 184, 166 S.W.2d 904 (1942). Rule 279, T.R.C.P.

The judgment of the trial court is affirmed.