**Fred CHAPAL et al., Appellants,**

**v.**

**Rodolfo VELA et al., Appellees.**

**No. 529.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 10, 1970.

Kelley, Looney, McLean & Alexander, Ralph Alexander, Edinburg, for appellants.

Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellees.

## OPINION

NYE, Justice.

This suit was brought by the appellants against Rodolfo Vela and Raul Vela, appellees. The appellants sought to cancel and set aside a deed to a 2400 acre tract of land in Hidalgo County. In the alternative the appellants sought to impose a constructive trust upon the tract in question. The trial court entered a summary judgment that the appellants take nothing. It is from this judgment that they have perfected their appeal to this Court.

On September 9, 1925 Ramon Vela executed a deed conveying the land in question, to his sons, the appellees. The deed recited a "consideration of Ten ($10.00) Dollars to me in hand paid, the receipt of which is hereby acknowledged, and for love and affection for my two sons, Raul Vela and Rodolfo Vela, * * *" The

appellants, heirs and descendants of Ramon Vela, sought to have the conveyance set aside because of fraud and undue influence by the appellees in procuring the execution of this deed. Alternatively, they contend that the appellees hold legal title to the land in question under a constructive trust imposed by law because of the fraud and undue influence exercised by them in procuring the execution of the deed from their father.

In determining the question on appeal of whether a summary judgment was properly granted, the Supreme Court of Texas recently held that if the summary judgment record establishes a right thereto as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiffs' cause of action, the summary judgment must be affirmed. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970) and Harrington v. Young Men's Christian Ass'n of Houston, 452 S.W.2d 423 (Tex.Sup.1970). It is this guideline that we follow.

Ramon Vela was a wealthy rancher who lived in Hidalgo County. The appellees resided with their father at his Chihuahua Ranch and worked for him without compensation from the time they were approximately 12 to 14 years of age old until their father's death on the 17th day of March, 1926, a period of ten to thirteen years. In the later years of his life, Ramon Vela was afflicted with glaucoma and could not see very well. Reynaldo Vela was the younger brother of the appellees. He was born in January 1914. His mother died at the time of his birth. He was raised by his aunt, Carlotta Vela, an unmarried sister of Ramon Vela at the Laguna Seca Ranch. This ranch was close to the land in question. Reynaldo did not live with his father any time during his lifetime, although he often visited his father at the ranch. All of the other appellants were grandchildren of Ramon Vela, with the exception of Jose Alejandro Vela, who was a great grandson.

Appellants Fred Chapal, Josefina Chapa, Margaret Chapa and Eduardo Chapa are the children of Raquel and Dr. David Chapa. Raquel was appellees' sister. She went to Mexico City when she was twenty-two years of age, married Dr. David Chapa and lived in Mexico City until 1928. She and Dr. Chapa then moved to San Antonio, Texas, where they resided until they died in 1941 and 1944 respectively. Raquel visited her father Ramon at the time he was hurt and knew of the deed from her father to appellees.

Appellant Jose Alejandro Vela is the great grandson of Ramon Vela. His father Raymond V. Vela is still alive but was not a party to this suit. His grandmother, Maria Vela, was a daughter of Ramon Vela by his first marriage.

During the period of a little more than one year prior to Ramon Vela's death, he executed his will, deeded the subject property to the appellees, executed a power of attorney, permitted certain lots to be sold, used his attorneys in fact to make the conveyances, and suffered a severe injury which incapacitated him until his death. These important events are undisputed and took place in the following manner.

On January 7, 1925, when Ramon Vela was 67 years of age he executed his last will. Under this will he gave one half of all of his property to his surviving wife and to his children of his second marriage in equal shares, that is: Rodolfo Vela (an appellee), one share, Raquel Vela de Chapa (wife of David Chapa) one share, Raul Vela (an appellee) one share, Reynaldo Vela (an appellant) one share and one share to his third wife, Silveria Chapa de Vela. The other one half of his estate was left in seven equal portions, one portion to each of his seven children by his two marriages: Estella Vela de Garza, Maria Vela de Vela (grandmother of appellant Jose Alejandro Vela) Juaquina Vela de Gentry (wife of D. O. Gentry), each, one share, (the foregoing persons were children of his first wife Juaquina Vela); and Rodol-

fo Vela (appellee), Raquel Vela de Chapa (mother of appellants Fred Chapal, Josefina Chapa, Margaret Chapa and Eduardo Chapa), Raul Vela (appellee) and Reynaldo Vela (appellant), each, one share, the later persons were children of his second wife (Josefina Chapa). He appointed Juan G. Fernandez of Brownsville, Texas, J. J. Cavazos, of Mission, Texas and "my beloved son, Raul Vela (appellee), as my joint independent executors. * * *" The will was admitted to probate without question concerning the soundness of Ramon Vela's mind or memory. The will made provisions for all of his children of his two marriages, as well as to his third wife. He admonished his children "that they shall care and provide for my present wife, Silveria Chapa de Vela, with all the necessary reasonable comforts of life throughout the remaining period which she may live after my death."

About eight months following the execution of Ramon Vela's will, the deed in question was prepared by George Wolfran. Wolfran was a school teacher, the superintendent of schools at Mission, a notary public and a close friend of Ramon Vela. The uncontradicted evidence was that Rodolfo Vela went to Mission at the request of his father. He brought Wolfran to his ranch where Ramon Vela told Wolfran to prepare the deed in question. Ramon gave Wolfran the description of the land from the abstracts he had. Three days later on September 9, 1925, Wolfran brought the deed to the ranch. The deed was signed and acknowledged by Ramon Vela before Wolfran. The deed was kept by Ramon Vela until November 27, 1925, at which time he instructed Rodolfo Vela to have it recorded at the courthouse in Edinburg.

The appellants contended that Ramon Vela was almost blind; that because of his health he had become frail; that he had to be led around when he walked and assisted in other ways. They contended that he lost interest in his ranch and other businesses and the appellees ran the ranch as they saw fit, branding the cattle with their

brand. On September 23, 1925, Ramon Vela executed a joint power of attorney in favor of Raul Vela and Rodolfo Vela. Appellants contend in an affidavit that such power of attorney gave appellees the opportunity to take control of Ramon Vela's properties and that because Ramon Vela was nearly blind and unable to make his own decisions the appellees started as early as November 6, 1925, conveying lots belonging to Ramon Vela under their power of attorney. No effort has ever been made to set aside these conveyances, nor has there been any assertion that the properties were not sold for valuable consideration. As circumstantial evidence of the infirmities of Ramon Vela, they contend that this was demonstrated by the fact that in December 1925 Ramon Vela fell from a balcony on the second floor of his ranch, was severely injured, and remained bedridden until his death in March 1926.

The appellants admit in their brief and during oral argument that their cause of action would be barred by the four year statute of limitations except for the fact that appellants did not discover the deed from Ramon Vela to appellees, until shortly before the filing of this suit. More than 40 years have passed since the date of the deed in question up until the filing of the suit. Appellants argue that the applicable statute of limitations only commences to run at the time when the fraud was actually discovered or at the time that it should have been discovered by the exercise of reasonable diligence. Citing authority. Appellants contend that the recording of the deed did not impute notice to them, citing Cox v. Clay, 237 S.W.2d 798 (Tex.Civ.App. Amarillo 1950, err.ref. n. r. e.).

■ The deed in the Clay case was recorded by the plaintiff's mother while the plaintiff was absent and of which he had not the slightest indication until some two years before the suit was filed. The record clearly shows that there was a mutual mistake and the relief sought was properly granted. Here, the appellants

were charged with notice of all the real estate owned by Ramon Vela as each of them, or those under whom they claim, were devisees under the will. The release and acquiescence from all of the devisees other than Reynaldo Vela, discloses that an independent investigation by each of the devisees, satisfied them as to the extent of the estate at the time the estate was probated. This precludes them from any relief. Under such circumstances the action asserted by all the appellants who were grandchildren and great-grandchildren of the grantor Ramon Vela are clearly barred by the four-year statute of limitations.

■ Reynaldo Vela, the brother, was cognizant of all of the alleged acts of undue influence in 1925 upon which he bases his claim, the same then as now. If the facts as set forth in his affidavit were sufficient to convince him that the appellees exercised undue influence over their father, the same facts should have been equally convincing to him in 1925 when he first knew of the facts, and for sure in 1935 when he became 21 years of age and his disabilities were removed. Bartlett v. Terrell, 292 S.W. 273 (Tex.Civ.App.—San Antonio 1927). The deed to the property was properly recorded. This gave him constructive notice of the ownership of the land. The appellees established their homes on the land in 1940. This gave him actual notice of their claim of ownership from that date. The record shows that Reynaldo had run cattle on the land in question with appellees as partners from 1934 until 1938. He resided very close to the land in question. He was a devisee under his father's will and had access to the inventory of the estate. The facts which he alleges relative to the infirmities of his father and the opportunity to influence him were facts personally known to him.

It has been often said that where it appears from the complaints that the means were at hand to readily discover the fraud complained of, and such means of information would have been used by a person of

ordinary care and prudence in the transaction of his own business, then he will be held to have had notice of everything which a proper use of such means would disclose. The issue presented is one of law for the decision of the court and not a question of fact for the determination of the jury. Bartlett v. Terrell, 292 S.W. 273 and cases cited therein; Cotten v. Republic National Bank of Dallas, 395 S.W.2d 930 (Tex.Civ.App.—Dallas 1965, n. r. e.).

■ Concerning appellants' charges of undue influence, the Supreme Court has set down the elements of a contestant's cause of action as guidelines that must be proved before an instrument can be set aside on the grounds of undue influence: (1) The existence and exertion of an influence, (2) the effective operation of such influence so as to subvert or overpower the mind of the grantor at the time of the execution of the instrument, and (3) the execution of the instrument which the maker thereof would not have executed but for such influence. The burden of proving undue influence is upon the party contesting the execution of this instrument. He must produce some tangible proof of the existing of each of such elements of undue influence. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138 (1914).

If Reynaldo Vela did not actually know of the ownership of the land by the deed, or suspect the same by the occupation and dominion over the land by his brothers, or if he was not told of appellees' ownership during his association with his brothers in the cattle business or at other times, then the law imputes actual notice upon him where a reasonably diligent inquiry on his part would have disclosed the same. This rule of imputed actual notice was defined by the Supreme Court in Champlin Oil & Refining Company v. Chastain, 403 S.W.2d 376 (Tex.Sup.):

"It has been determined by Texas authority that imputed actual notice carries with it the same legal consequences as conscious knowledge. In Hexter v. Pratt, 10 S.W.2d 692, (Tex.Com.App. 1928) it was said: 'Notice in law is of two kinds—actual and constructive. * * * In common parlance "actual notice" generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. * * * So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.' The Hexter case was cited with approval by this Court in Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951), * * *."

We have reviewed the pleadings, affidavits, admissions and instruments introduced into evidence and hold that there is no genuine issue as to any material fact. Appellants' asserted cause of action under either theory is barred by the various Statutes of Limitations. Arts. 5510, 5519, and 5529, Vernon's Ann.Civ.St. The appellees are entitled to a judgment as a matter of law. Rule 166-A, Texas Rules of Civil Procedure. The judgment of the trial court is accordingly affirmed.

Affirmed.