**CITY OF TEMPLE, Texas, Appellant,**

v.

**E. L. THOMAS et ux., Appellees.**

**No. 12080.**

Court of Civil Appeals of Texas, Austin.

March 13, 1974.

Rehearing Denied April 17, 1974.

4.  Wilmoth had been discharged by Ancira-Winton prior to the time of the trial.

William T. Wilson, Temple, for appellant.

Hume Cofer, Shirley Meissner, Austin, for appellees.

SHANNON, Justice.

E. L. Thomas and wife, Beulah V. Thomas, appellees, sued the City of Temple, appellant, in the district court of Bell County for breach of a written lease agreement. Upon trial and based upon a jury verdict, judgment was entered for appellees for $29,500.00. We will affirm that judgment.

In the outset we are confronted by appellees' motion to strike the transcript. In that motion appellees correctly state that the endorsement on the face of the transcript showed that it was transmitted by registered mail directly from the district clerk of Bell County to the Clerk of this Court. As grounds for their motion to strike appellees say that the transcript did not bear an endorsement by the district clerk that the same was delivered to appellant or its counsel, and that, in fact, the district clerk himself rather than appellant or its counsel, filed the transcript with the Clerk of this Court. Appellees claim that the Clerk of this Court was without authority to file the transcript since it was not properly endorsed. We will overrule appellees' motion to strike the transcript.

In support of their motion to strike the transcript, appellees rely upon Texas Rules of Civil Procedure, rules 390(a), 386, and 389. Rule 390(a) provides:

"(a) Either party may file the transcript for which he has applied to the district or county clerk, and which has been delivered to him; both of which facts must appear on the transcript by the indorsement of the clerk. If the indorsement shows that it was applied for by one party and delivered to the other, it must be shown by the indorsement of the clerk, or otherwise, to entitle it to be properly filed as the transcript of the party to whom it was delivered, that it was delivered to him by consent of the other party, as each party has the sole right to the transcript which he has applied for to be made out for him; and if it is so filed without that fact being shown, the court may strike the case from the docket as improperly filed, upon its own inspection, or upon motion of the party to whom the transcript belonged."

Appellees stress that part of Rule 386 which provides that ". . . the *appellant* shall file the transcript . . . with the clerk of the Court of Civil Appeals . . ." (Emphasis added)

Rule 389 reads as follows:

"Upon receipt of the transcript the clerk shall indorse his filing thereon, showing the date of its reception, if it comes to him *properly indorsed* and provided it is filed within the time required, and shall notify the adverse party of the receipt of the record in said cause. If it comes to him after the said date, or is not so *properly indorsed,* he shall without filing it, make a memorandum upon it of the date of its reception and keep it in his office subject to the order of the person who sent it or to the disposition of the court, at the same time notifying in writing the person who sent it why the clerk does *not file it.* Said transcript shall not be filed until a proper showing has been made to the court for its not being *properly indorsed* or for not being received by the clerk in proper time, and upon this being done it may be ordered by the court to be filed, if the rules have been complied with, upon such terms as may be deemed proper, having respect to the rights of the opposite party." (Emphasis added)

Ordinarily, the appellant will order the transcript from the district or county clerk and file it with the Clerk of the Court of Civil Appeals. However, the appellee may also order and file a transcript in the same manner as appellant. The appellee may do so in those instances in which he is dissatisfied with the judgment in some respect and is of the opinion that, for some reason,

the appellant will not perfect the appeal. To avoid mistake, or possibly deception, Tex.R.Civ.P. 390(a) provides that the district or county clerk will deliver the transcript to the party who ordered it and so endorsed that delivery on the face of the transcript.

■ It is the responsibility of the party who ordered the transcript to see to it that it is filed with the Clerk of the Court of Civil Appeals. See Lewis v. Lewis, 125 S.W.2d 375 (Tex.Civ.App.1939, writ ref'd). To accomplish that purpose the party ordering the transcript, or his attorney, may, as in other things, designate an agent to tend to the filing of that document. If that party, or his attorney, resides some distance from the county seat, and the time for filing the transcript is short, we judicially know that frequently the county or district clerk is requested to mail the same to the Clerk of the Court of Civil Appeals. Though under no duty to comply with the request, that clerk may consent and thereby acts as agent for that party or his attorney in filing the transcript with the Court of Civil Appeals. In that instance the clerk of the district or county court should endorse on the face of the transcript that it was transmitted to the Clerk of the Court of Civil Appeals at the request of the party or his attorney who had applied for that record. This holding is, in our opinion, in compliance with Tex. R.Civ.P. 390(a), 386, and 389, and is in harmony with Tex.R.Civ.P. 1.

After submission and oral argument of this cause, this Court granted appellant's motion to amend the statement of facts and, at the same time, overruled appellees' motion to strike that instrument. The statement of facts, as originally tendered to the Clerk of this Court, was without either the signature of appellees' counsel or the trial judge. Counsel for appellees refused to approve the statement of facts for the stated reason that the volume of exhibits accompanying the statement of facts was not certified by the court report-

er and that it did not contain certain items admitted into evidence.

■ The Clerk of this Court refused to file the statement of facts without either the agreement of appellees' counsel or the approval of the trial court. Tex.R.Civ.P. 377(d). Thereafter, appellant's counsel presented the statement of facts to one of the district judges of Bell County, but not to the judge who had tried the case. Upon presentation, the judge who had not tried the case, signed a statement which was affixed to the statement of facts and which read as follows, "Examined, Approved and Ordered filed as a part of the record in the above entitled and numbered cause." There was no showing of notice to appellees' counsel or of any hearing held prior to the time the judge signed the instrument attached to the statement of facts. In our opinion, appellant failed by this effort to comply with Tex.R.Civ.P. 377(d).

■ Thereafter, and upon presentation, the Clerk of this Court filed the statement of facts, and a short time later appellees filed their motion to strike. By filing their motion to strike within thirty days after filing the transcript in this Court, appellees prevented a waiver of those objections relating to those "informalities in the manner of bringing a case into court." Tex.R.Civ.P. 404. Nevertheless, this Court, pursuant to Tex.R.Civ.P. 428 and 429, may permit the correction of the statement of facts wherein it appears that the same is not properly prepared or some material portion has been omitted. Pacific Fire Ins. Co. v. Smith, 145 Tex. 482, 199 S.W.2d 486 (1947). And in heretofore granting appellant's motion to amend the statement of facts, this Court exercised the authority provided in those Rules.

As shown by the supplemental transcripts filed in this Court, appellant in order to correct the deficiencies in the statement of facts obtained a hearing before the judge who had tried the case. Though appellant did not correct the statement of

facts as promptly as directed, we are satisfied that the same has been corrected and is now in substantially proper form, and we will consider it for all purposes.

The subject matter of the lease agreement at issue is approximately 172 acres of land and water at and near Lake Belton in Bell County called Tennessee Valley Park. In 1955, the Department of the Army granted the City of Temple a "license" for twenty-five years to use and occupy that acreage for public park and recreational purposes. That document provided, among other things, that the City might enter into agreements with third parties, subject to Army approval, to operate the park facilities and accommodations and provide the services needed by the members of the public. Pursuant to that provision, and in 1955, the City entered into a "sub-license" with D. F. Garrett granting to him, for a price, "commercial privileges and activities" in the park for a period of ten years. In 1958, the City amended the "sub-license" and granted Garrett an option to renew the original "sub-license" agreement for an additional ten years from and after the expiration date of the original "sub-license," provided that Garrett gave " . . . notice in writing to the City of Temple six (6) months prior to the expiration of the primary term of said original sublicense contract of his election to exercise said option . . ." Garrett constructed a "marina" in the park consisting of five docks, a minnow house, and a cafe building.

In 1960, Garrett assigned his interest in the "sub-license" to S. F. Mabry. Garrett's assignment to Mabry was expressly approved in writing by the City. In 1968, Mabry reassigned for a price, his interest in the "sub-license" to appellee, E. L. Thomas. The Mabry-Thomas assignment was approved by resolution of the City on June 6, 1968.

With regard to the rights of termination, the license agreement between the Department of the Army and the City provided that the City might relinquish the license at any time by giving thirty days' notice in writing. The "sub-license" agreement between the City and Garrett provided for revocation by the City upon the happening of any of the following events: (a) national emergency, (b) non-payment of rental, (c) need for the property by the United States, (d) a breach by the "sub-licensee" of any of the terms or conditions of the "sub-license," and (e) a determination by the City that the "sub-licensee" has failed to so operate his business so as to furnish to the public adequate business activities and services as authorized in the agreement.

On May 2, 1969, the City notified Thomas that the "sub-license" agreement between them was canceled as of June 9, 1969. Likewise, on May 2, the City notified the Department of the Army that it relinquished its licensee to operate the 172 acres as of June 9, 1969.

In answer to appellees' suit for breach of the "sub-license" the City pleaded that the "sub-license" expired by its own terms in 1965 since Garrett's assignee, Mabry, never exercised his option to renew the original "sub-license" as provided in the 1958 amendment. Appellees responded by pleading that in the event the City did not receive notice of Mabry's election to extend the "sub-license" for another ten-year term, then the City waived such notice, and that the City was estopped to deny that notice because appellees relied upon the approval by the City of the 1968 assignment of the "sub-license" to appellees.

The City's other defense was that since under the original license agreement the City could relinquish its license to the Department of the Army by giving thirty days' notice, the City claimed it could likewise terminate the "sub-license" with appellees Thomas by giving a like notice.

The case was submitted to the jury upon six special issues. In answer to those issues the jury found that Garrett, or his assignee, did not give notice to the City of

his election of his option to renew the license, but the jury answered further that the City waived the requirement of notice of election to exercise the option to renew the "sub-license," and that when appellees purchased Mabry's rights in the "sub-license" they relied upon the resolution by the City authorizing that assignment. With respect to the damage issues, the jury found that $4,500.00 was the amount of the difference between the value of appellees' improvements in the park immediately before the "sub-license" was canceled and the value of those improvements after removal from the park. The jury answered further that the value of appellees' "sub-license" from the time of its cancellation by the City until 1975 was $25,000.00.

As stated before, the City granted the "sub-licensee" an option to renew the original "sub-license" agreement, provided that written notice be given the City of the election to exercise the option. The City's evidence was that such notice was never received, but appellees pleaded a waiver of that requirement by the City.

■■■ The court submitted appellees' theory of waiver to the jury, and appellees obtained a favorable answer. There was evidence to support the jury's answer; and it is settled that the requirement of written notice of the exercise of an option to extend a lease may be waived by the lessor even though that notice may constitute a condition precedent to the exercise of that option. Burke v. Shafer, 189 S.W.2d 444 (Tex.Civ.App. 1945, writ ref'd n. r. e.).

With respect to the City's second defensive contention, its agreement with Garrett specified five events which would entitle the City to revoke the "sub-license." A determination by the City to relinquish its license from the Army was not one of the grounds for revocation. The City did plead that appellees had failed to keep the park in good order and had failed to maintain the structures and equipment in a satisfactory condition, and that such failure was a breach of the terms and conditions

of the "sub-license." The City did not, however, request the submission of any special issues supporting such an alleged breach of the "sub-license."

■■■ The City's third point of error complains of the error of the court in overruling an objection to the charge. The City's objection was dictated to the court reporter and an instrument embodying that objection is included in the transcript. However, that instrument is not signed by the judge and his ruling is not endorsed thereon, and, as such, the same does not comply with the requirements of Tex.R.Civ.P. 272. We may not consider the point. Cody v. Mahone, 497 S.W.2d 382 (Tex.Civ.App.1973, writ ref'd n. r. e.), Long v. Smith, 466 S.W.2d 32 (Tex.Civ. App.1971, writ ref'd n. r. e.), Sherwin-Williams Paint Co. v. Card, 449 S.W.2d 317 (Tex.Civ.App.1970, no writ), Mergele v. Houston, 436 S.W.2d 951 (Tex.Civ.App. 1969, writ ref'd n. r. e.).

■■■ Appellant's final point is that the court erred in entering judgment for appellees " . . . because there was insufficient evidence to support the jury findings of damages." Appellees called Conrad Fath to testify concerning the value of the improvements involved and the value of the "sub-license" from the time of its cancellation until 1975. Fath had been in the marine business for twenty years and had been closely associated with marina operators for that period of time. He was familiar with Lake Belton and had seen appellees' buildings, docks and piers at the marina. He gave opinion evidence as to the worth of the improvements and the value of the "sub-license" until the end of its term. Appellant did not offer any evidence to rebut Fath's testimony.

We are satisfied that the answers of the jury to special issues five and six are supported by some evidence, and that those answers are not so contrary to the great weight and preponderance of the evidence so as to be clearly wrong.

The judgment is affirmed.