Evila Garcia **RODRIGUEZ**, Appellant,

v.

Refugio **GARCIA**, Appellee.

No. 914.

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 20, 1975.

T. Turner Pope, Kamp, Laswell & Pope,
Houston, for appellant.

Carlos F. Vela, Harlingen, for appellee.

## OPINION

NYE, Chief Justice.

The appellant in her first motion for rehearing asserts that this Court erred in assuming certain facts from the plaintiff's pleadings that were not in evidence. After reviewing the record, we find that the appellant is correct on several of these assertions. For this reason, our original opinion and our opinion on motion for rehearing have been withdrawn and this opinion is substituted therefor.

This is a suit to cancel a mineral deed. Suit was brought by Refugio Garcia, the appellee, against Evila Garcia Rodriguez, Refugio Garcia's niece. Mr. Garcia sought to cancel and set aside two warranty deeds which conveyed to his niece the mineral interest to 10.29 acres. Trial was before a jury and the case was submitted on speical issues. The jury found: (1) that plaintiff Refugio Garcia on September 1, 1971, and on October 8, 1971, did not have the mental capacity to sign and deliver the two mineral deeds in question; and (2) that the defendant Evila Garcia Rodriguez used undue influence upon plaintiff Refugio Garcia to get him to sign and deliver the two mineral deeds in question. The trial court entered judgment for Garcia cancelling and setting aside the two deeds. It is from this judgment that the niece has perfected her appeal to this Court.

Mr. Garcia was a seventy-three (73) year old male of Mexican ancestry. He resided in Raymondville, Texas, during the period in question. He was and still is unemployed. Garcia's only source of income at that time was royalty payments of approximately $60.00 per month from the property in question. At the time of trial, Garcia could not and never has been able to read, write or understand the English language. He had several physical disabilities. His niece, Evila Garcia Rodriguez, resides in Houston, Texas.

Sometime after August 20, 1971, but prior to September 1, 1971, the niece took Mr. Garcia from his residence in Raymondville, Texas, to her home in Houston. The purpose of this trip was for Mr. Garcia to receive medical attention for a gall bladder and a prostate condition which was causing him some trouble. On September 1, 1971, prior to Mr. Garcia's going to the hospital for the first time, the niece took her uncle to the office of her attorney, Henry V. Sanchez, to have a deed drawn up. The deed conveyed Garcia's interest in his 10.29 acre royalty interest to his niece. The deed dated September 1, 1971, was executed on the same date. The niece gave no actual consideration for this conveyance. The deed, dated September 1, 1971, was prepared pursuant to the attorney's instructions. The deed was witnessed by Gloria Garza, notarized by Mr. Sanchez, and signed by Mr. Garcia, in the attorney's office in Houston. Thereafter Mr. Garcia entered the hospital and remained there for approximately a week. He was then released and stayed out of the hospital for a period of approximately two weeks, and then he went back again. A short time after being discharged for the second time, Mr. Garcia executed the second deed in question.

This second deed, executed October 8, 1971, purported to be the same as the one executed September 1, 1971, the only difference being an addition to the descriptive language. The alleged reason for this second deed was "so that proper description of Mr. Garcia's interest would be included". This later deed was witnessed by Rose Rodriguez, the niece's daughter-in-law, notarized by Gloria G. Perez, the attorney's secretary, and signed by Mr. Garcia.

Suit was filed by Garcia against his niece to cancel and set aside these two deeds. Mr. Garcia contends that he did not know that he was signing a deed; that he was unable to read, speak, or understand English; and that he was told that he was signing an application for Social Security benefits and pension. He states that the two deeds were obtained through

the exercise of undue influence by his niece and that he would not have signed these deeds but for such undue influence. The niece on the other hand contends that her uncle was made fully aware of the fact that he was signing the deeds conveying the mineral interest to her and that the conveyance was made to her because of his love and affection for her. She stated that the deeds were translated into Spanish for him so he would understand them and that he, in fact, did understand what he was signing.

Appellant's first point of error was that the trial court should not have submitted, over defendant's objections, special issues numbers 1 and 2 because the issues as submitted are too broad, general, and/or multifarious in that each issue inquires about too great a portion of the total factual picture and/or inquires about several different facts when each such fact should be inquired about in a separate special issue.

■ This point is not properly before us. These objections were dictated to the court reporter by agreement of counsel and with permission of the court and they appear in the statement of facts. However, the objections were not filed with the clerk, they do not have the official signature of the judge endorsed thereon, nor were they included in the transcript, all of which is required by Rule 272, Texas Rules of Civil Procedure. This rule provides in part as follows:

"... The requirement that the objections to the court's charge shall be in writing will be sufficiently complied with if such objections are dictated to the court reporter in the presence of and with the consent of the court and opposing counsel, before the reading of the court's charge to the jury, *and are subsequently transcribed and the court's ruling and official signature endorsed thereon and filed with the clerk in time to be included in the transcript. ...*" (Emphasis added.)

The basis for requiring the trial court to endorse the "objection to the court's charge" by placing his official signature thereon is to give the court an opportunity to formally attest to the correctness of the form and substance of the objections. The court can visually observe the written objections and check the exactness of its rulings in connection with the charge. This requirement is for the protection of the trial judge. In the absence of a compliance with this rule, appellant's objections were not properly preserved for appellate review. This point cannot be considered by us. Cody v. Mahone, 497 S.W.2d 382 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.); Long v. Smith, 466 S.W.2d 32 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); Mergele v. Houston, 436 S.W.2d 951 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e.); City of Temple v. Thomas, 507 S.W.2d 858 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.); Grabes v. Reinhard Bohle Machine Tools, Inc., 381 S.W.2d 395 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Maryland Casualty Company v. Golden Jersey Creamery, 389 S.W.2d 701 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); Charter Oak Fire Insurance Company v. Perez, 446 S.W.2d 580 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n. r. e.); Blackmon & Associates, Inc. v. Palmer Building Supplies & Specialties, Inc., 463 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); Kettle v. Smircich, 415 S.W.2d 935 (Tex.Civ.App.—Corpus Christi 1967, no writ); Walker v. Bounds, 510 S.W.2d 392 (Tex.Civ.App.—Corpus Christi 1974, no writ); Town of Lindsay v. Cooke County Electric Cooperative Association, 497 S.W.2d 406, reversed on other grounds 502 S.W.2d 117, certiorari denied 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559.

It is also necessary that such objections, together with the court's rulings and official signature thereon, be filed and included in the transcript. Commercial Standard Insurance Company v. Southern Farm Bu-

reau Casualty Insurance Company, 509 S. W.2d 387 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.) ; Cannon v. Canida, 321 S.W.2d 631 (Tex.Civ.App.—Texarkana 1959, writ ref'd n. r. e.) ; Warner Construction Company v. Blue Diamond Company, 429 S.W.2d 912 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Appellant's point of error No. 1 is overruled.

■ Appellant's second point of error complains that the trial court erred in submitting, over defendant's objections, special issue No. 1 and special issue No. 2 on the ground that the record reflects no evidence to support said issues. In deciding the question of law involving a "no evidence" point, the court must consider only the evidence and inferences therefrom tending to support the findings of the jury, disregarding all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965) ; In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951) ; Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960). Special issues numbers 1 and 2 read as follows:

"1. Do you find from a preponderance of the evidence that Plaintiff, Refugio Garcia, on September 1, 1971, and on October 8, 1971, did not have the mental capacity to sign and deliver the two mineral deeds in question?

Answer: 'He did not have the mental capacity.'

2. Do you find from a preponderance of the evidence that Defendant, Evila Garcia Rodriguez, used undue influence upon Plaintiff, Refugio Garcia, to get him to sign and deliver the two mineral deeds in question?

Answer: 'She did use undue influence.' "

The record discloses that Mr. Garcia was unable to read, write or understand the English language. He depended on his relatives for nearly everything, including translations from English to Spanish. Natividad Garcia, who had known Mr. Garcia

for sixteen (16) years, testified that Garcia could not hear and was ignorant. He said he was "just like a little child". Maria Garcia testified that Mr. Garcia was deaf and his mind was not too well. Senovia Reyna, who had known Mr. Garcia for twenty (20) years testified that he was very naive, ignorant and that he did not hear well. The record discloses that Mr. Garcia executed the first deed prior to going into the hospital. He executed the second deed only a short time after leaving the hospital for the second time. Throughout that time, he was very nervous. He was apprehensive about seeing the doctors and about having the surgery required.

■ Mental capacity may be evidenced circumstantially by facts that would show: (1) a person's outward conduct, manifesting an inward and causing condition; (2) pre-existing external circumstances tending to produce a special mental condition; and (3) prior or subsequent existence of a mental condition from which its existence at the time in question may be inferred. See 19 Tex.Jur.2d, Deeds § 21, page 274; Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849 (1952) ; Miguez v. Miguez, 221 S.W.2d 293 (Tex.Civ.App.—Beaumont 1949, no writ). See also Jackson v. Henninger, 482 S.W.2d 323 (Tex.Civ.App.—Austin 1972, no writ) ; Gaston v. Bruton, 358 S.W.2d 207 (Tex.Civ.App.—El Paso 1962, writ dism'd). It is also clear after reviewing the statement of facts, particularly Mr. Garcia's testimony, that he had a great deal of difficulty in hearing and in understanding and responding to questions propounded to him by the attorneys and the court. He evidenced a poor and lapsing memory and was very easily confused. After reviewing the record, it is clear to us that there was ample evidence to support the jury's finding that Garcia did not have the mental capacity to sign and deliver the two deeds in question.

■ Next, we consider the niece's complaint that there was "no evidence" that she used undue influence upon Refugio Garcia to get him to sign and deliver

the two mineral deeds in question. Our Supreme Court has set down the elements of a contestant's cause of action as guidelines that must be proved before an instrument can be set aside on the grounds of undue influence. They are: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the grantor at the time of the execution of the instrument; and (3) the execution of the instrument which the maker thereof would not have executed but for such influence. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138 (1914); Chapal v. Vela, 461 S.W.2d 466 (Tex.Civ.App.—Corpus Christi 1970, no writ). The burden of proving undue influence is upon the party contesting the execution of this instrument. He must produce some tangible proof of the existence of each of such elements of undue influence. Chapal v. Vela, supra. Undue influence may be shown by circumstantial evidence. In fact, circumstantial rather than direct evidence usually has to be relied on to prove the exercise of influence because of the fact situation surrounding the execution of the instrument in question. 19 Tex.Jur.2d Deeds, § 33, pages 291–292. Prior to the execution of the two deeds the niece had never lived with her uncle, and during the last twenty (20) years, the niece had never taken care of him a single time. There is testimony by Maria Garcia that prior to the time the niece came to take her uncle to the hospital, the niece had never come even to visit with him before. The uncle testified in response to questions concerning his signature on the deed:

"Q. This document was signed in Houston, Texas?

A. In Houston? No. I was in Houston but I didn't sign anything over there, no, sir. She wanted that I sign and that I get the check for the pension and she wanted—

Q. Who wanted?

A. —Bad things

Q. Who wanted you to sign to get the pension?

A. Evila. (the niece)."

The record further discloses that the uncle's *only* source of income and support was from the oil royalties from the property conveyed. The niece testified concerning the consideration given for the conveyance of the property from her uncle:

"Q. Just one more question, Mrs. Rodriguez, and I want this clarified: When these properties—rather these deeds were executed and these interest were conveyed from Mr. Garcia to you, did you or did you not promise him that you were going to take care of him for the rest of his life?

A. I didn't promise him anything. We just said that he would help me and I would help him. You can't promise a thing like that because I could die first.

Q. There was no consideration for the transfer of these deeds?

A. No."

After reviewing the above evidence, it is clear that there was evidence of probative force to support the submission of special issue No. 2 and to support the finding of the jury that the niece used undue influence upon Mr. Garcia to get him to sign and deliver the two mineral deeds. Appellant's second point of error is overruled.

■ The appellant's third point of error was that the trial court erred in submitting, over defendant's objection, special issue No. 1 and special issue No. 2, on the ground that the record reflects *insufficient evidence to support their submission.* (Emphasis supplied.) We are satisfied that there was sufficient evidence to support the jury's finding, both on lack of mental capacity and the exercise of undue influence on appellee by appellant as we have set out before. It is, however, appellant's complaint in her point of error No. 3 that there was insufficient evidence to support the *submission* of special issues num-

bers 1 and 2, and not that there was insufficient evidence to support the jury's answers. See Steubing v. Munson, 487 S.W. 2d 853 (Tex.Civ.App.—Eastland 1972, writ ref'd n. r. e.). The situation in which there is some evidence to support the submission of the issues in question, but insufficient evidence to support the answers to the issues is to be distinguished. See Hodges, Special Issue Submission In Texas, Section 2, pages 6–7. If there was any evidence of probative value to support an affirmative answer to these issues, it was the court's duty to submit them. Garza v. Alviar, supra; McDonald v. New York Central Mutual Fire Ins. Co., 380 S.W.2d 545 (Tex.Sup.1964); Steubing v. Munson, supra. Having already determined that there was some evidence to support the submission of special issues numbers 1 and 2 under appellant's point of error number 2, it becomes unnecessary to do the same again. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed. Appellant's first and second motions for rehearing are overruled.

Affirmed.